**James Edward HANIS, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15674.**

United States Court of Appeals
Eighth Circuit.

July 16, 1957.

Rehearing Denied Oct. 11, 1957.

Walter A. Raymond, Kansas City, Mo. (Frank L. Cohn, Kansas City, Mo., on the brief), for appellant.

Kenneth C. West, Asst. U. S. Atty., Kansas City, Mo. (Edward L. Scheufler, U. S. Atty., Kansas City, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and VOGEL and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Defendant Hanis appeals from final judgment and sentence upon his conviction by a jury upon Counts I, III, V, VII, and IX of the indictment. Count, I, based upon conspiracy violative of section 371, Title 18 U.S.C.A., charged that defendants, Hanis and Graddy, commencing about January 1, 1953, and end-

ing about June 1, 1955, did unlawfully, knowingly, and willfully conspire to commit offenses against the United States, to wit, to violate sections 51, 52, and 54 of Title 41, U.S.C.A., and that defendant McCabe joined said conspiracy about July 1, 1954. The indictment alleges that Westinghouse Electric Corporation, hereinafter called Westinghouse, was a prime contractor with the United States operating under fixed-price-reimbursable contracts with price-redetermination clauses, and that Hanis at all relevant times was employed by Westinghouse as an assistant buyer or a buyer. It is alleged that the purpose and plan of the conspiracy was that Hanis, in exchange for commissions, gratuities, and compensation paid him by Graddy and McCabe, would aid and assist companies in which his co-defendants were interested to obtain purchase orders and subcontracts from Westinghouse. Fifteen overt acts are alleged.

The other counts upon which Hanis was convicted charge substantive offenses in violation of sections 51, 52, and 54 of Title 41 U.S.C.A., asserting that the property received by Hanis, as alleged in the various counts, was given to him to induce him to use his influence to obtain purchase orders from Westinghouse for his co-defendants' companies. Count III charges Hanis with accepting from Graddy fifty shares of Products Engineering Corporation, Count V charges Hanis with accepting from Graddy sixteen and two thirds shares of Products Engineering Corporation, Count VII charges Hanis with receiving from Graddy an automobile, and Count IX charges Hanis with receiving from McCabe checks totaling about $65,450.80.

We are here concerned only with defendant Hanis' appeal. Defendant Graddy pleaded guilty to certain counts including the conspiracy count. Defendant McCabe was acquitted upon all counts.

It is established by the evidence that during all times here material Westinghouse was a prime contractor, manufac-

turing jet engines for the United States Navy, an agency of the United States. This work was carried on pursuant to four contracts which provided that Westinghouse would be compensated upon the basis of cost plus nine per cent. A target price was estimated by the contracting parties, and, if the product was manufactured at a cost below the target price, Westinghouse would receive twenty cents upon each dollar saved, and if cost exceeded the target price, Westinghouse would be penalized upon the same basis. It is undisputed that during the period covered by the indictment Hanis was an employee of Westinghouse, serving first as an assistant buyer and later as a buyer.

Defendant Hanis, as grounds for reversal, urges in substance:

1. The indictment is fatally defective as to the conspiracy count and the substantive counts in that it fails to allege that Hanis knew his employer, Westinghouse, was operating under Government contracts providing for compensation upon a cost-plus basis.

2. The evidence is insufficient to sustain Hanis' conviction upon any of the counts of the indictment in that there is no evidence that he had knowledge that his employer was a prime contractor with the Government with compensation determinable upon a cost-plus basis.

3. The court's instructions are erroneous in that they did not require the jury to find that Hanis knew his employer was operating under Government contracts providing for compensation on a cost-plus basis, such knowledge being an essential element of the offenses charged.

4. The verdict on the conspiracy count convicting Hanis and acquitting McCabe is inconsistent within itself and also inconsistent with the substantive counts, and constitutes a prejudicial and fatal variance.

5. The contracts between the Government and Westinghouse introduced in evidence are incomplete in that certain amendments are missing, and hence the Government has not proved that the contracts were of the type required to make

sections 51, 52, and 54, Title 41 U.S.C.A., applicable.

Hanis' contention underlying asserted errors 1 to 3, inclusive, above set out, is that it is incumbent upon the Government, in order to sustain his conviction, to allege and prove that Hanis knew his employer was operating under Government cost-plus contracts. Hanis concedes in his brief that he was at all times here material a Westinghouse employee, and that he knew his employer was manufacturing jet engines for the United States under contract. Except for the contention made in asserted error No. 5, which we will hereinafter consider, defendant Hanis does not seriously dispute the fact that the contracts between his employer and the Government provide for compensation upon a cost-reimbursable basis. There is abundant evidence to support the charge that Hanis received the substantial payments in money and property as alleged in the indictment from Graddy, McCabe, and their companies, as a reward for placing Westinghouse purchase orders with them. Westinghouse was producing the jet engines for the Government under an emergency or crash program. Some materials needed for production were hard to get. Hanis, as an assistant buyer and buyer, had considerable discretion in the making of purchases of materials and in determining the prices to be paid therefor. There is substantial evidence that Hanis completed purchases of materials from his co-defendants' companies at excessive prices. In many instances he told his co-defendants what price quotations to make. We shall not further develop the facts on this feature of the case as Hanis does not seriously challenge the sufficiency of the evidence to show that he received payments in exchange for his influence.

■ Hanis does vigorously contend that he had no knowledge of the terms of the contracts between Westinghouse and the Government, and he insists that such knowledge is an essential element of the offenses with which he was charged. We do not believe that there is sufficient evidence to support a finding that Hanis had actual knowledge of the terms of the Government-Westinghouse contracts. The contracts are in evidence and disclose that they were originally classified as "Confidential" and were so stamped, and that the confidential classification was not cancelled until March 1956, a date subsequent to the dates of the acts upon which the indictment is based.

We are, therefore, confronted with the vital question of whether knowledge by Hanis that the Government-Westinghouse contracts contained cost-plus-compensation features is an essential element of the substantive offenses and the conspiracy charged.

Section 51, Title 41 U.S.C.A., provides:

"The payment of any fee, commission, or compensation of any kind or the granting of any gift or gratuity of any kind, either directly or indirectly, by or on behalf of a subcontractor, as defined in section 52 of this title, (1) to any officer, partner, employee, or agent of a prime contractor holding a contract entered into by any department, agency, or establishment of the United States for the furnishing of supplies, materials, equipment or services of any kind whatsoever, on a cost-plus-a-fixed-fee or other cost reimbursable basis * * * is hereby prohibited. * * * *"

Section 54 of Title 41 provides:

"Any person who shall knowingly, directly or indirectly, make or receive any such prohibited payment shall be fined not more than $10,000 or be imprisoned for not more than two years, or both."

We find nothing in the foregoing statutes which makes knowledge of the terms of the contract an essential element of the offense. Section 51 prohibits payment of compensation or gratuities by a subcontractor to the employee of any prime contractor operating under a Government cost-plus contract. The statute does not say that its application is limited to employees having knowledge of the

cost-plus features of the contract. Section 54 provides the penalty to be imposed upon a person who knowingly makes or receives "such prohibited payment." Again, we find no express language to the effect that knowledge of the terms of the Government contract is an essential element of the offense. We do not believe it to be the usual thing for an employer to divulge the details of his contracts to his employees and subcontractors. The interpretation of the statute urged by Hanis would greatly limit its applicability. We find nothing in the statutes as written which indicates any intention on the part of Congress to limit their applicability to situations where the subcontractor or employee had actual knowledge of the terms of the Government contract. If Congress had intended that knowledge of the cost-plus features of the contract be an essential element of the offense, it could have easily said so. It did say so in the harboring criminals statute involved in Fulbright v. United States, 8 Cir., 91 F.2d 210, relied upon by Hanis. There, the statute contained the words, "after notice or knowledge of the fact that a warrant or process has been issued." 18 U.S.C.A. § 1071. Obviously, under such a statute knowledge of the issuance of the warrant is an element of the offense. Hanis' reliance upon the Fulbright case is misplaced.

In Reynolds v. United States, 9 Cir., 67 F.2d 216, which involved a charge of defrauding a national bank, the court rejected appellant's contention that it is a necessary element of the offense that the defendant know the bank he was defrauding was a national bank. The court states (at page 217):

"In support of the first assignment the appellant claims that in order to properly allege the crime of defrauding a national bank, or a member of the Federal Reserve Bank, it is essential not only to allege that the bank defrauded was such a bank, as was done in this case, but also to allege that the defendant knew that the bank he was defrauding was such a bank. The point is not well taken. If, as alleged, the defendant conspired to defraud a national bank it is immaterial whether or not he knew it to be such a bank. The point does not merit serious discussion. * * *"

The Reynolds case is cited and distinguished in the Fulbright case, supra.

We have found no cases construing sections 51, 52, and 54 with respect to the issue here raised. In considering convictions arising under other statutes, the courts seem to have consistently held that knowledge of the facts bringing the crime within federal jurisdiction is not an essential element of the offense. In McNabb v. United States, 6 Cir., 123 F. 2d 848, reversed on other grounds 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, conviction for murder of a federal employee engaged in official duties, in violation of 18 U.S.C.A. § 253 (now section 1114), was affirmed. The court held that proof of federal employment and engagement in his duties by the victim is only necessary to establish jurisdiction, and that the killer need not know that he is killing an employee of the United States engaged in the performance of his duties, stating (123 F.2d at page 855):

"Jurisdiction in the federal courts under Section 253 stems from the actuality that the person killed is a designated federal officer, engaged in the performance of his official duties. In the language of the statute quoted in excerpt, no exemption is expressly made of a killer who does not know that he is killing a federal officer of a class covered by the statute. Exemption may not be implied. The words and intent of the statute are clear beyond the necessity for any canonical construction. The statute says, 'whoever shall kill,' not 'whoever shall kill with knowledge that he is killing' a federal officer of an enumerated class, shall be punished."

In Kasle v. United States, 6 Cir., 233 F. 878, a prosecution for possession of goods stolen from an interstate shipment, the

court rejected the appellant's contention that the indictment should be dismissed because it did not contain an allegation that the appellant knew the interstate character of the goods. The court states (at page 882):

"* * * One who knowingly receives stolen chattels must do so at the peril of their having been stolen while in course of interstate transportation; indeed it is not perceived why the thief should escape conviction under this statute just because he did not know the points of origin and destination. * * * The most then that can be said of the object of allegation, as well as proof, touching the interstate character of the articles is to show the existence of the condition which brought the subject within the federal power and jurisdiction."

In Clark v. United States, 5 Cir., 213 F.2d 63, where a conviction for conspiracy to violate 18 U.S.C.A. § 659, which legislates against thefts from an interstate shipment, was affirmed, the court summarizes the law as follows (at page 64):

"As to the substantive offense denounced by 18 U.S.C.A. § 659, it is clear that the statute does not require knowledge that the property was in interstate commerce when embezzled or stolen but requires knowledge only that the property was embezzled or stolen. The courts have consistently held that 'one who knowingly receives stolen chattels must do so at the peril of their having been stolen while in course of interstate transporation'. * * *"

The Supreme Court has held, in considering a mail fraud conviction, that intent to use the mails to defraud is not an essential element of the offense. Pereira v. United States, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435. See also Wolpa v. United States, 8 Cir., 86 F.2d 35, 40. In Lonergan v. United States, 8 Cir., 287 F. 538, at pages 538–539, in affirming a conviction for receiving stolen goods, this court states:

"* * * The statute does not require knowledge that the property was stolen while in interstate commerce but requires only knowledge that the property was stolen. The entire statutory requirements are that the property possessed shall have been stolen from interstate commerce and that such possession is with knowledge that the property is stolen property."

Consideration of the facts of our present case, in the light of the law established by the cases hereinabove cited, satisfies us that so far as the substantive offenses charged are concerned it was unnecessary for the Government to plead or prove that defendant Hanis had knowledge that the Government-Westinghouse contracts were compensable upon a cost-plus basis. Proof that the contracts were of the cost-plus type was necessary only for the purpose of establishing federal jurisdiction.

The conspiracy charged in Count I of the indictment involves some additional problems. The conspiracy statute, section 371, Title 18, U.S.C.A., provides:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both. * * *"

The conspiracy here charged is to commit an offense against the United States.

■ The gist of the offense of conspiracy "is agreement among the conspirators to commit an offense attended by an act of one or more of the conspirators to effect the object of the conspiracy." United States v. Falcone, 311 U.S. 205, 210, 61 S.Ct. 204, 207, 85 L.Ed. 128. Proof of an agreement, express or implied, to commit the offense is required. Here, there is ample proof that Hanis and one or more

of his co-defendants agreed to a plan to commit the offense proscribed by sections 51, 52, and 54. Hanis agreed to accept pay for his influence in directing purchase orders for the benefit of his co-defendants. The requisite criminal intent was present. The evidence supports a finding that defendant Hanis and at least one co-conspirator entered into the illegal plan alleged and that the overt acts were committed to carry the plan into effect. The conspirators did exactly what they agreed and planned to do.

This case is clearly distinguishable from cases relied upon by Hanis. The Fulbright case has heretofore been discussed. Cases such as United States v. Crimmins, 2 Cir., 123 F.2d 271, and Davidson v. United States, 8 Cir., 61 F.2d 250, are distinguishable upon the basis that the evidence in such cases did not support a finding that the conspiracy contemplated transporting stolen property in interstate commerce. In Davidson the court found that the alleged co-conspirators had no connection with the original theft or transportation. Some of the acts of the alleged co-conspirators were beyond the scope of the express or implied understanding of the conspirators. In the Crimmins case the court found Crimmins had no reason to believe the bonds he was purchasing came from out-of-state sources, and that it was not an express or implied term of his agreement with the thief that he would deal with bonds moving in interstate commerce. The court does say (123 F.2d at page 273):

"In the case at bar it might have been an implied term of the agreement that Crimmins should take bonds coming from any source; if it had been, he could have been found guilty of the conspiracy, for such an agreement would have dealt with the place of the theft, even though it did no more than provide that the place made no difference. * * *"

In Pereira v. United States, supra, conviction for conspiracy was upheld. In his concurring opinion, as to the conspiracy conviction, Justice Minton states (347 U.S. at page 14, 74 S.Ct. at page 365):

"* * * To be guilty of the conspiracy, Brading had only to reasonably anticipate that Pereira might use the mails, and if he did subsequently use them, then Brading is bound."

We are of the opinion that there is a fact basis in this case for a determination that all the wrongful acts committed were within the scope of the conspiracy. Hanis and his co-conspirators planned for the kickbacks upon the purchase orders regardless of what the method of compensation for Westinghouse might be upon its contracts with the Government. The evidence supports the conclusion that the conspirators fully agreed to do the very things sections 51, 52, and 54 were designed to prohibit and punish, and that overt acts were committed in furtherance of the conspiracy. The conspiracy conviction is fully supported by Reynolds v. United States, supra.

We hold that knowledge of the terms of the contracts is not an essential element of the conspiracy here charged. Hence, we need not determine whether Hanis under the record before us could be charged with such knowledge. The quotation from Pereira, supra, indicates reasonable anticipation of the terms of the contracts might be sufficient. In McGunnigal v. United States, 1 Cir., 151 F.2d 162, defendant was convicted of conspiracy to defraud the Government. The wrongful act was to pad payrolls on ship construction work for the United States and its allies. The court states (at page 166):

"* * * Knowing this much, and it being well known generally that the 'cost plus' type of contract was widely used by the Government during the late war, we think it might logically be inferred that

the appellants in fact knew, or at least had reason strongly to suspect, that the payrolls which they conspired to pad would ultimately be paid by the United States Government. * * * "

In our present case it is established that Hanis knew his employer had contracts with the Government for the production of essential war supplies. It is perhaps fair to say that it is a matter of general knowledge that the Government frequently contracts for this type of work on a cost-plus basis, and that Hanis knew that there was a distinct possibility that the Westinghouse contracts provided for cost-plus compensation.

Hanis quotes extensively from Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288, to the effect that the finding of a criminal intent on the part of the defendant is necessary to support the conviction. Such doubtless is the law. The court so instructed the jury.

The only objection Hanis is making to the court's instructions is the court's failure to instruct to the effect that knowledge of the cost-plus feature in the contracts is an essential element of the offense. Proper exception on this basis was not made to the trial court's instruction. Hanis claims that he has reached the issue as to the propriety of the instructions by objecting to the failure of the court to give the instructions requested by his co-defendant McCabe. McCabe in Requested Instruction No. 30 did request the court to instruct in substance that McCabe could not be convicted unless it was proved that he had knowledge of the cost-plus feature of the contracts. The record shows that while Hanis objected to the court's failure to give some of McCabe's requested instructions, such objection did not go to Instruction No. 30. In any event, Instruction No. 30 if given would have been of no benefit to Hanis as by its terms it was applicable only to the defendant McCabe. Accordingly,

there are no exceptions to instructions before us for review.

We reach the conclusion that knowledge on the part of defendant Hanis that Westinghouse's contracts with the Government provided for compensation upon a cost-plus basis is not an element of either the substantive offenses or the conspiracy here charged and, consequently, the indictment was not defective for failing to allege such knowledge, and Hanis' motion for acquittal was properly denied. The court committed no prejudicial error in its instructions.

Hanis' contention that the verdict convicting him and acquitting McCabe is inconsistent within itself and also inconsistent with the substantive counts and constitutes a prejudicial and fatal variance is without merit and does not warrant detailed consideration. The indictment charges one conspiracy which was originally entered into between Hanis and Graddy with McCabe later joining therein. A combination of two or more persons is required to constitute a conspiracy. This requirement is fully met. Graddy entered a plea of guilty to the conspiracy count. The jury convicted Hanis upon the conspiracy count and acquitted McCabe thereon. While there was evidence to connect McCabe with the conspiracy, the case against McCabe was far weaker than that against Hanis and Graddy. McCabe as a witness denied the conspiracy. Graddy as a witness testified that McCabe was not a participant in the conspiracy. Hanis did not testify.

The fact that all alleged conspirators were not convicted does not constitute a fatal variance. In Berger v. United States, 295 U.S. 78, at page 81, 55 S.Ct. 629, at page 630, 79 L.Ed. 1314, the applicable law is thus stated:

"It is settled by the great weight of authority that although an indictment charges a conspiracy involving several persons and the proof establishes the conspiracy

against some of them only, the variance is not material. * * *"

■ Hanis also makes some contention that the dealings between Hanis and Graddy were separate and distinct from those between Hanis and McCabe, and that there was a fatal variance in proof for the reason that the evidence tended to prove two conspiracies rather than one. Hanis relies upon Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, and other cases. The distinction between the present case and Kotteakos is too apparent to warrant discussion. In any event, the indictment alleged one conspiracy, and the Government's proof supports its single conspiracy theory. Hanis was the prime conspirator throughout. We doubt whether there is proof of more than one conspiracy. Even if it could be said that there might be proof of two conspiracies, we are convinced that under the circumstances of this case the variance would not be prejudicial. Kotteakos v. United States, supra; Berger v. United States, supra; Quirk v. United States, 8 Cir., 161 F.2d 138, 142.

■ Hanis' final contention is that the Government-Westinghouse contracts introduced in evidence are incomplete, and hence do not establish that Westinghouse's compensation was upon a cost-plus basis. This contention is based entirely upon the fact that, while there are amendments bearing higher numbers, there are no amendments bearing numbers 6, 9, 10, 12, 14, 16, 17, 19, and 24. There was positive and unrefuted evidence in the form of testimony of Westinghouse officials that the contracts and amendments introduced were complete. The contracts introduced were also certified by the Navy Department as being true copies of the contracts and all amendments thereto. There is absolutely no proof that the contracts offered and received in evidence did not constitute the entire contracts including all amendments thereto. The court was warranted in accepting the contracts and amendments, which were introduced in evidence, as representing the entire agreement between Westinghouse and the Government.

The judgment appealed from is affirmed.