**Rudolph J. NASSIF, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Paul Otto SCHMADEBECK, Appellant,**

v.

**UNITED STATES of America, Appellee.**

Nos. 18290, 18292.

United States Court of Appeals Eighth Circuit.

Dec. 6, 1966.

Rehearing Denied in No. 18290 Jan. 18, 1967.

---

1. E. g., appellant's appendix, pp. 175a, 207a.

Keith D. Kennedy, Minneapolis, Minn., for appellant Rudolph J. Nassif, Case No. 18290 and filed printed brief.

John A. Cochrane, St. Paul, Minn., for appellant Paul Otto Schmadebeck, Case No. 18292 and filed printed brief.

Patrick J. Foley, U. S. Atty., Minneapolis, Minn., for appellee and filed printed brief.

Before VOGEL, Chief Judge, VAN OOSTERHOUT and LAY, Circuit Judges.

LAY, Circuit Judge.

Defendants Schmadebeck, Nassif, Rumpel and Buchanan were jointly indicted and tried to a jury on their not guilty plea to a two-count indictment against them.

Count I charges a violation of Tit. 18 U.S.C. § 371 for conspiracy to steal, carry away, take away and conceal with intent to convert goods out of interstate commerce. Count II charges a violation under Tit. 18 U.S.C. § 659 that the defendant did steal, unlawfully take and carry away with the intent to convert. It is alleged in the indictment that the named defendants worked with Lawrence James Fondow, not a defendant, to commit these acts. Fondow pleaded guilty to a conspiracy count. His testimony was the main thrust of the government in implicating the others.

All defendants were found guilty as to both counts with the exception of

Rumpel who was acquitted by the jury.[1] The lower court granted defendant Nassif a new trial on Count II. He appeals his conviction of Count I, whereas defendant Schmadebeck appeals his conviction on both Counts I and II. Appellant Schmadebeck was sentenced four years under a general sentence for both counts. Appellant Nassif was sentenced to 18 months under Count I.

The evidence shows appellants were business partners in a company called the Ostlund Construction Company in Minneapolis, Minnesota. The company's work involved boarding up stores and buildings after fires. In the same building Schmadebeck operated Labor Pool, Inc. Ostlund Construction Company utilized laborers operating out of the Labor Pool, Inc. Next door to the Ostlund Construction Company was Dolly's Bar, owned by Nassif.

The accomplice Fondow, an employee of the Labor Pool, testified on the morning of May 5, 1965, at 7:30 a. m. he met Schmadebeck and agreed to hijack a load of liquor or furniture. An hour later they met Nassif at the bar and Schmadebeck asked him what he would pay for a "load of liquor". Nassif replied, "About $3,000.00."

Schmadebeck arranged with Fondow and Buchanan, another employee of the Labor Pool, to hijack a trailer of goods. The trailer was stolen by Buchanan and Fondow with a tractor rented by Schmadebeck from the yard at Trucking, Inc. in Minneapolis. It contained merchandise shipped by "Gamble-Skogmo" in Chicago to "Gamble-Skogmo" in the Twin Cities. Schmadebeck's master plan involved the transfer of goods into three rented trucks. Examination of the Hertz rental agreements evidences the rental was *charged* to the partnership of Nassif and Schmadebeck, the Ostlund Construction Company. The transfer took place in the early morning hours of May 6, at

Glaco Twin Cities, a company at which defendant Rumpel worked. After the goods were loaded they were taken to Mankato, stored there and two days later returned to Minneapolis to be sold. The goods were represented to be salvage goods from a tornado and flood area in Mankato. Schmadebeck received a check for $1,500.00 (Ex. 8) *made payable to Ostlund Construction Company,* for the sale of the goods from Gordon Braastad, a salvage dealer. *Schmadebeck deposited this in the Company account and wrote a check ($231.00) on the account* to Fondow in payment for him driving the truck. Nassif's further alliance to the scheme was shown through various statements made by him at different intervals in Fondow's presence: "take inventory of the stuff"; "where are the goods?"; "police know every time we turn"; "fellow * * * to take load off our hands"; and "hurry up * * * party wants to buy the stuff." Nassif's giving Schmadebeck the telephone number of the buyer on a slip of paper was certainly an incriminating factor. None of this was denied.

There was substantial evidence convicting both Buchanan and Fondow, as well as Schmadebeck. Several persons were hired to help load the Hertz trucks. All verified the participation of the three men. The rental certificates of the Hertz trucks were placed in evidence with Schmadebeck's and Buchanan's signatures. The manager of the Martin Building in Mankato was called concerning his dealings with Schmadebeck and the storage of the goods. The men who helped load the trucks at Mankato testified to the presence of Schmadebeck and his instructions concerning the goods.[2] These men all denied knowledge of the fact that the goods were actually stolen.

The merchandise consisted of various and sundry goods, such as pillow cases, blankets, lamps, sheets, etc., which came

---

1. The defendant Buchanan, a minor, was placed on probation under the provisions of the Youth Correction Act for a period of three years.

2. A college student, Donald Hellendrung testified Schmadebeck instructed him to paint out the words "Chicago" and "Gamble-Skogmo" on the boxes.

from Gamble-Skogmo in Chicago, Illinois. The trailer was put on a railroad semi-carrier and brought to St. Paul by train. The subsidiary of the Milwaukee Railroad took the van off the railroad car (this was called the Milwaukee Motor Transportation Company) and left it at the yard of Trucking, Inc., who was to deliver it to Gamble-Skogmo (the consignee) in Minneapolis the next day.

Nassif's first point of error is aimed at the lower court's finding of insufficient evidence to support the substantive count of aiding and abetting and therefore it "perforce is insufficient for a showing of the existence of a prior conspiracy." Such argument is without substance. Where the acquittal of a substantive count does not constitute a determination that the alleged overt acts were not committed, the acquittal does not preclude a conviction on the conspiracy count. Aggers and Coates v. United States, 8 Cir., 366 F.2d 744; Herman v. United States, 5 Cir., 289 F.2d 362, 369; United States v. Hickey, 7 Cir., 360 F.2d 127, at 139. Appellant Nassif denies he had any connection with the overt acts charged in the indictment. It is a fundamental principle in the law of conspiracy that a particular defendant need not commit any specific alleged overt act as long as one of his co-conspirators was involved in the overt act. Braverman v. United States, 317 U.S. 49 at 53, 63 S.Ct. 99, 87 L.Ed. 23. In the present case, eleven overt acts are charged. The jury's conviction of co-conspirators Schmadebeck and Buchanan

on the substantive count establishes that the overt acts were committed.

It is likewise urged Nassif's conduct comes after the theft and is not proof of his having entered into the conspiracy. Argument is made that Nassif's alleged role relates only to conversion; that the statute relates to stealing only.[3] The indictment under Count I included not only the conspiracy to "steal" but also "take away, carry away and conceal" with "intent to convert". Defendant overlooks (1) the object of this conspiracy was one for illicit gain; McDonald v. United States, 8 Cir., 89 F.2d 128;[4] (2) the conspirator need not know of or participate in all activities of the conspiracy. A conspiracy is not "born full-grown." It grows by "successive stages." "Secrecy and concealment" are its main ingredients. The law does not require knowledge of all its details, otherwise "conspirators would go free by their very ingenuity." Blumenthal v. United States, 332 U.S. 539, 68 S.Ct. 248, 256, 92 L.Ed. 154.

In Ingram v. United States, 360 U.S. 672 at 679, 79 S.Ct. 1314, at 1319, 3 L.Ed.2d 1503, Mr. Justice Stewart, said:

"The court's decisions in Grunewald v. United States, 353 U.S. 391 [77 S.Ct. 963, 1 L.Ed.2d 931]; Lutwak v. United States, 344 U.S. 604 [73 S.Ct. 481, 97 L.Ed. 593]; and Krulewitch v. United States, 336 U.S. 440 [69 S.Ct. 716, 93 L.Ed. 790], do not, as petitioners appear to contend, prevent the jury from treating this *subsidiary objective* as an

---

3. Actually each substantive offense listed in § 659 constitutes a separate crime: "steal, take away, carry away and conceal". See United States v. Carpenter, 7 Cir., 143 F.2d 47. The Supreme Court has held, however, under similar statutes that a double punishment cannot be served arising out of the same transaction, even though involving different crimes. Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773.

4. This court stated in McDonald v. United States:
"But if a court should be so hardy as to attempt to formulate a general

rule as to when a continuing criminal conspiracy, having for its object illicit gain, is at an end, it might well run somewhat thus: Whenever the unlawful object of the conspiracy has reached that stage of consummation, whereat the several conspirators having taken in spendable form their several agreed parts of the spoils, may go their several ways, without the necessity of further acts or consultation, about the conspiracy, with each other or among themselves, the conspiracy has ended." 89 F.2d at 134.

element of the conspiracy. Those cases hold only that the life of the conspiracy cannot be extended by evidence of concealment after the conspiracy's criminal objectives have been fully accomplished. ' * * * [A] vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of coving up after the crime.' Grunewald v. United States, supra [353 U.S.], at 405 [77 S.Ct. at page 974]." (Our emphasis).[5]

Where it is obvious the parties have agreed to take certain steps after the theft was consummated, the conspiracy can be found to continue. See United States v. Hickey, supra. Contrary to appellant's contention, a coconspirator may even become a member of the conspiracy without being in on it at its inception. One need only knowingly contribute his efforts in furtherance of it. Even if we construe the evidence that Nassif entered the conspiracy at a later date, he took the conspiracy as he found it. If he only participated in arranging the sale of the merchandise (according to Fondow), he still would adopt the previous acts and declarations of his fellow conspirators. Phelps v. United States, 8 Cir., 160 F.2d 858; Hernandez v. United States, 9 Cir., 300 F.2d 114, United States v. Dardi, 2 Cir., 330 F.2d 316. We said in Phelps:

" * * * And, of course, a defendant can join a conspiracy at any time

and may be found to have done so when, with knowledge of its existence, he has undertaken to further its design." 160 F.2d at 868.

*However, the evidence is clear that Nassif was implicated in the origination of plans. We cannot overlook the "innocent" conversation at Dolly's Bar on the morning of May 5. This assumes prominence with Schmadebeck's early morning telephone call to Nassif (3:00 a. m.) immediately after the theft to report they had a "load of dry goods" and were taking it to Mankato in three trucks. This clearly implies prior agreement; at least the jury could so find.*

■ The problem the court faces, notwithstanding Nassif's implication in a conspiracy to steal and conceal, is whether Nassif had sufficient knowledge to conspire to commit a federal offense. Does the scope of the conspiracy include an "anti-federal intent"[6] to steal merchandise from interstate commerce? The plan to steal and convert may not be enough. Knowledge of the interstate character of the goods constitutes a prerequisite of proof. Davidson v. United States, 8 Cir., 61 F.2d 250, Linde v. United States, 8 Cir., 13 F.2d 59, United States v. Sherman, 2 Cir., 171 F.2d 619. See also Dahly v. United States, 8 Cir., 50 F.2d 37 at 43.

Analysis is necessary. After the goods were stolen, the words "Chicago" and "Gamble-Skogmo" which appeared on the outside of the boxes were painted over. Schmadebeck knew this.[7] Concealment was the *next* step. Although Nassif is

---

5. Defendant relies on Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350. There the defendant was allegedly the "fence" to sell stolen securities transported in interstate commerce in violation of Tit. 18 U.S.C. §§ 415 and 550. Bollenbach became involved after the securities were transported from Minnesota to New York. The Supreme Court held the conviction should be set aside since the offense charged was conspiracy to transport the securities across state lines. The offense had been completed. This is clearly distinguishable where the overt acts within the

scope of the conspiracy alleged are still being carried out.

6. See Development in the Law, Criminal Conspiracy, 72 Harv.L.Rev. 920 at 937.

7. See Clark v. United States, 5 Cir., 213 F.2d 63 (conspirators knew cases of whiskey had addresses of different states on them); United States v. Cordo, 2 Cir., 186 F.2d 144, 147 (defendants inspected stolen cartons and bales which were clearly marked with names and addresses of North Carolina consignors and New York consignees).

not guilty by reason of mere association, the jury could weigh his close relationship with Schmadebeck in the overall scheme as to whether Nassif knew "the details related to the realization of their common goal." See Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435. From Fondow's testimony, a reasonable fact finder could determine Nassif knew of the theft of a trailer, knew Schmadebeck "had a load of dry goods," knew he rented Hertz trucks to transfer the load, and knew where the goods were taken. Nassif was totally indifferent to the source of the goods. He was concerned over *inventory* and *concealment* and *sale.*

 Coconspirators seeking illicit gain from conversion of another's property seldom become selective as to whether the goods they steal flow in commerce or not. Clearly, if the plan was to steal merchandise only from a known defined local source Nassif might have been guilty of conspiracy to steal or conceal, which only a state may punish. But if the scheme is to steal goods, wherever they may be found, and in fact, goods are stolen from interstate commerce, then we feel the scope of the conspiracy can be broad enough to imply intent to commit a federal crime.[8] See Hanis v. United States, 246 F.2d 781 at 787; United States v. Crimmins, 2 Cir., 123 F.2d 271.[9]

 We hold there was sufficient evidence to implicate Nassif with the overall conspiracy to steal from interstate commerce on Count I.

 Appellant Nassif also claims improper remarks of the government in final argument. The prosecutor argued he didn't challenge the testimony of defendant's wife because, "she's having a tough enough time being married to him." Although we certainly do not condone such remarks, we have examined the facts and circumstances surrounding this comment and are convinced that it did not deprive the defendant of a fair trial. See Johnson v. United States, 8 Cir., 356 F.2d 680, 685; Isaacs v. United States, 8 Cir., 301 F.2d 706, 737, cert. den. 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58.

 Schmadebeck raises several grounds of error as to his conviction on Counts I and II. We find no error on his conviction as to the substantive

---

8. Judge Nordbye's excellent instruction encompassed this theory.

 "The object of the conspiracy alleged was that the conspirators would steal and convert to their own use goods and chattels which constituted an interstate shipment of liquor or furniture. The object of the conspiracy must, of course, be in violation of the United States law; that is, theft of goods in interstate commerce. In that connection I will tell you that if the alleged agreement between the parties, which allegedly constituted the conspiracy was so broad that it encompassed a plan to steal merchandise wherever available, or wherever located, and so broad that it would include goods in interstate commerce, then if that agreement has been established beyond a reasonable doubt by the evidence, you may find that one of the objects of the conspiracy was to steal merchandise from interstate commerce. On the other hand, if the evidence does not establish beyond a reasonable doubt a conspiracy so broad in scope with reference to the theft of merchandise so as to include goods in interstate commerce, the Defendants cannot be found guilty of the conspiracy count in the indictment."
 Appellant Nassif did not except to such instruction.

9. In United States v. Crimmins, supra, Judge Hand said in distinguishing between the charge of conspiracy and the substantive offense:
 " * * * While one may, for instance, be guilty of running past a traffic light of whose existence one is ignorant, one cannot be guilty of conspiring to run past such a light, for one cannot agree to run past a light unless one *supposes* that there is a light to run past." 123 F.2d at 273 (Our emphasis).
 We would add an explanatory hypothesis:
 "If one agrees to drive through a downtown section of a city at 60 mph without stopping, one could be guilty of conspiring to run past a traffic light, even though ignorant of such light, because one could reasonably suppose that there is such a light to run past."

count, and, in view of the general sentence given, we need not review his conviction on the conspiracy count.[10] A general sentence on several counts of an indictment will be sustained on appeal if the defendant was properly convicted upon any count which is sufficient in and of itself to support the judgment. Barenblatt v. United States, 360 U.S. 109 at 115, 79 S.Ct. 1081, 3 L.Ed.2d 1115; Atkinson v. United States, 8 Cir., 344 F.2d 97.

According to appellant Schmadebeck, a pre-trial motion for severance should have been sustained because Fondow's confession was in the possession of the government before trial. However, assuming the government had a duty to divulge this information, and assuming the court could possibly conclude the statement would find its way into evidence, the substance of the statement and the use thereof, in the trial, can be examined to determine if prejudice existed under Rule 14, Fed.R.Crim.P. As pointed out by the government, appellant Nassif offered the statement and not the prosecution. Nassif did so in an attempt to impeach Fondow's testimony as to the complicity of Nassif with the crime, because the statement did not mention Nassif's name. There was no objection by Schmadebeck's attorney at the time the statement was offered.[11] More importantly, *the motion to sever was not renewed* at the time the statement was offered. See Delli Paoli v. United States, 352 U.S. 232 at 241, 77 S.Ct. 294, 1 L. Ed.2d 278; contrast United States v. Bozza, 2 Cir., 365 F.2d 206 at 216.

It later became obvious why no objection was made. Mr. Cochrane wanted the statement for impeachment of Fondow's entire story. On cross-examination he asked Fondow as follows:

"Q. I have just one question. Mr. Foley read your statement to the jury as it relates to Mr. Schmadebeck assisting you in stealing the trailer, going down to the trailer, riding around looking in the tractor. Aren't those statements in fact untrue and false, is that correct? A. That's correct."

In final argument Mr. Cochrane argued Fondow's testimony was false and that the statement proved it was false. His failure to object as Mr. Brophy did on behalf of another defendant is strong indication that his strategy at the time was completely different. See Newman v. United States, 8 Cir., 331 F.2d 968.

 The defendants were properly joined under Rule 8(b) Fed.R.Crim. P. As has been said, there must be prejudice shown before severance of offenses or defendants is ordered under Rule 14 of the Fed.R.Crim.P. Determination of severance lies within the discretion of the trial court. Firotto v. United States, 8 Cir., 124 F.2d 532, Slocum v. United States, 8 Cir., 325 F.2d 465, Rizzo v. United States, 8 Cir., 304 F.2d 810 cert. den. Nafie v. United States, 371 U.S. 890, 83 S.Ct. 188, 9 L.Ed.2d 123. See also Cardarella v. United States, 8 Cir., 351 F.2d 443. We find no prejudice to appellant as to the denial of the motion to sever before trial.

 Appellant argues alternatively, the court failed to give a cautionary instruction that the confession did not apply to Schmadebeck. There was no written request pursuant to Rule 30 Fed.R. Crim.P. Even if we recognize appel-

---

10. Our statements concerning Nassif's link to the conspiracy, however, apply with greater weight to Schmadebeck. The proof is uncontroverted, he was the "key man" throughout.

11. On page 565 of the record immediately before the government read the statement into evidence, the following discussion took place:

"Mr. Cochrane: Your Honor, I would object (to the reading). This is repe-

titious. *The jury will have the statement in evidence. It is in evidence and they will have it. The exhibit speaks for itself.* * * *

"The Court: *No one has challenged* the statement in any other way except Nassif's name is not mentioned.

"Mr. Foley: That's correct, and of course, it is a Defendant's exhibit."
(Our emphasis)
Mr. Cochrane offered no rebuttal.

lant's oral statement as a request under Rule 30, there still must be an exception to the court's given instruction as to any omission. See Armstrong v. United States, 8 Cir., 228 F.2d 764; Rosenbloom v. United States, 8 Cir., 259 F.2d 500, Harding v. United States, 8 Cir., 337 F. 2d 254. This was not done.[12]

It is claimed that there was a variance between the indictment on Count II and the actual proof. The indictment charged Schmadebeck with the actual participation in the theft. The court, however, charged the jury that Schmadebeck could be found guilty in aiding and abetting the crime under Tit. 18, U.S.C. § 2. Defendant claims this was error to do so. We disagree. An aider and abettor may be indicted directly with the commission of the substantive crime and the charge may be supported by the proof that he only aided and abetted in its commission. Jin Feuy Moy v. United States, 254 U.S. 189, 41 S.Ct. 98, 65 L.Ed. 214, Madigan v. United States, 8 Cir., 23 F.2d 180, Mays v. United States, 8 Cir., 261 F.2d 662. See also Nye and Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919.

The next point of error urged by appellant Schmadebeck concerns the failure of the court to receive "Exhibit B", the certification from the Interstate Commerce Commission showing Trucking,

12. There existed an additional reason appellants oral request for a cautionary instruction was not given. Appellant Schmadebeck at the close of the government's case did make a motion to strike the exhibit as it pertains to the case of United States v. Schmadebeck (R. 645). The court said he should have made his objection at the time it was offered. However, then Mr. Cochrane stated " * * * I feel that my motion is timely to the cautionary instruction or at least the motion to strike on behalf of defendant Schmadebeck." (R. 646). The trial judge said he would recognize the objection even though not timely made. The court said, "I will rule that the Fondow statement should be received by the jury only insofar as it may relate to its failure to mention Nassif. I will make that ruling." (R. 646) This was done on November 10.

On November 16, before final argument, the question again arose as to the use that could be made with such statement in final argument. The court restated his ruling of November 10. However, *all* counsel urged that the statement should be utilized for general impeachment of Fondow as well. The court said this would be inconsistent to appellant's motion to strike (R. 868–875). However, upon *all* counsel's insistence, the following stipulation was made:

"The Court: The record may indicate that Nassif's Exhibits A and A-1, which were received in evidence originally insofar as the exhibits reflected an absence of any reference to Mr. Nassif, but in that counsel now believe that the exhibits should be received generally for impeachment purposes insofar as any statements therein may tend to impeach Fondow's testimony, the Court having conferred with counsel, we are in accord that the exhibit may be received not only as to the Defendant Nassif, but received on behalf of the other defendants insofar as it may be utilized for impeachment purposes, with the reservation, however, that the portion to which Mr. Brophy objected to, some four or five lines will be excised before it is delivered to the jury. All right.

Mr. Slattengren: Thank you.

The Court: I gather that counsel are in accord with the summary that I have now made

Mr. Kennedy: Agreeable to Defendant Nassif.

Mr. Brophy: Yes.

Mr. Slattengren: Agreeable.

*Mr. Cochrane: Agreeable.*" (R. 875–876)

Judge Mehaffy's statement in Newman v. United States, supra, recognized the defendant's dual tactics here:

"It is under these circumstances that we believe the language of the court in United States v. Five Cases of Figlia Mia Brand of Oil, 179 F.2d 519, 523 (2nd Cir. 1950), cert. denied 339 U.S. 963 [70 S.Ct. 997, 94 L.Ed. 1372] * * * justifies our finding that the district court's failure to give the cautionary instruction on credibility did not deprive defendant of any substantial rights: 'The victim of alleged prejudice cannot be allowed to nurse it along to the point of reversibility and then take advantage of a situation which by his silence he has helped to create.'"

One cannot simultaneously "run with the hare and hold with the hounds".

Inc. had no interstate authority. The appellant contends that "Exhibit B" would show that delivery by the Milwaukee Railroad was made at its terminal in St. Paul, Minnesota, and for all practical purposes there was delivery to the consignee.[13]

Section 659 does not require the carrier from which the goods are stolen to be an interstate carrier. The statute relates to "*goods * * * moving as * * * an interstate shipment*". Appellant's contention assumes relevancy where none exists.[14] It is not material whether Trucking, Inc. possessed an interstate certificate. *Under the circumstances of this case* the status of the carrier in no way is material or relevant to the issue of delivery to the consignee or whether the goods had come to the end

of their interstate journey. We agree with the trial court's ruling.

Appellant complains concerning the use by the government of "Exhibit 7". This was identified as being an inventory list made out by the defendant Buchanan and Fondow but not offered or received in evidence. It developed after Buchanan had been arrested, his automobile was located by the Minneapolis Police Department and within his auto was "Exhibit 7" (an alleged inventory of the goods). After reference was made to it, the exhibit was never offered into evidence.[15] Upon appellant's request, Judge Nordbye instructed the jury to disregard testimony concerning the exhibit. There is serious doubt as to whether Schmadebeck had any standing to complain about the exhibit if it were offered.[16] However, we fail to see there

---

13. Judge Nordbye in his instructions stated in part as follows:

"*A shipment, members of the jury, in interstate commerce ceases to be in interstate commerce when the railroad has made delivery to the consignee, Gamble-Skogmo, and had fulfilled its contract of carriage, then the shipment left interstate commerce.* * * * There is no evidence here that the merchandise in question had ever been delivered to Gamble-Skogmo. There is evidence that Trucking, Inc., called up Gamble-Skogmo as to where the delivery should be made, and that Trucking, Inc., was instructed that the delivery should be made some place such as 700 North Washington Avenue or thereabouts.

"So, members of the jury, under the facts as you find them to be, it will be for you to determine whether or not the Government has established beyond a reasonable doubt that this merchandise in question was in interstate commerce when it was allegedly stolen. Of course, a conspiracy to steal merchandise not in interstate commerce is not a crime or offense against the laws of the United States. If the merchandise in this trailer was not in interstate commerce, then the interstate character of the merchandise in the trailer in question has not been established, and no crime against the United States had been committed, in the event it has

been stolen as the Government contends." (Our emphasis)
There was no exception to said instruction.

14. See Marifian v. United States, 8 Cir., 82 F.2d 628 (goods, interstate even though stolen from owner who was not a public carrier); Wolk v. United States, 8 Cir., 94 F.2d 310 (goods, interstate even though stolen from intrastate carrier enroute *to* interstate shipper); Chapman v. United States, 8 Cir., 151 F.2d 740 (before theft consignee broke seal of car and removed part of shipment; new seal was affixed, balance of sugar was still considered part of interstate shipment). Cf. O'Kelley v. United States, 8 Cir., 116 F. 2d 966 (seal was broke, but car padlocked by consignee, held: consignee had taken possession). See also Winer v. United States, 6 Cir., 228 F.2d 944.

15. There was discussion with the court that further foundation would be necessary to admit Exhibit 7. The government indicated they would produce the necessary witnesses to supply the missing foundation. The defendants objected to its use. We fail to see how the government abused its position by abandoning the use of the exhibit. (R. 368)

16. Theoretically, the objection by Schmadebeck was on the basis that it was evidence gained by illegal search and seizure. But Exhibit 7 did not belong to Schmade-

was such an extensive use of the exhibit which would concern Schmadebeck, assuming he had a right to complain. There was other testimony an inventory was made when Schmadebeck was present. The limited testimony on Exhibit 7 demonstrated at least it was not in Schmadebeck's handwriting. We find no error.

■ Appellant Schmadebeck seeks reversal on the ground Fondow did not make a full disclosure of his leniency by the government to the jury. The government denies such leniency. Appellant relies on Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed. 2d 1217. The cross examination of Fondow and the final argument by Mr. Cochrane, Schmadebeck's attorney, told the jury all the facts which relate to any leniency given Fondow.[17] Mr. Foley, an officer of the court, stated no other facts exist. Despite appellant's suspicions, this clearly distinguishes *Napue*, supra. However, notwithstanding the attack on Fondow's credibility, the proof of Schmadebeck's involvement was verified by over ten different witnesses. Fondow's testimony was essential to the conviction of Nassif, but not Schmadebeck.

We have read the full 1100 pages of the testimony of trial. We feel both defendants had a fair trial with a fair charge. There is no error in the convictions of Nassif as to Count I for conspiracy and as to Schmadebeck as to Counts I and II.

Judgment affirmed.

---

beck nor was it taken from his car. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

17. In final argument, Mr. Cochrane said: "I asked Mr. Fondow and the Government, the testimony of Fondow—I introduced the Information that Mr. Fondow pled guilty to. He pled guilty not to the substantive crime which he

---

testified from this witness stand that he committed, which carries double the penalty of the conspiracy, *but he was allowed by the Government* to plead guilty to the crime of conspiracy to commit the substantive act, which carries half the penalty. You may weigh that in weighing the credibility of anybody who testifies." (Our emphasis) (R. 992–3)