**UNITED STATES of America**

v.

**Eugene James ALLEGRUCCI, Appellant.**

**No. 12464.**

United States Court of Appeals
Third Circuit.

Argued April 21, 1958.

Decided July 16, 1958.

Michael von Moschzisker, Philadelphia, Pa. (Joseph P. Brennan, Scranton, on the brief), for appellant.

Robert J. Hourigan, U. S. Atty., Scranton, Pa., for appellee.

Before MARIS, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

Following a jury trial, defendant was found guilty and sentenced for violation of 18 U.S.C. § 659[1] upon an indictment which charged him with possession of stolen goods, moving in interstate commerce, knowing them to have been stolen. He prosecutes this appeal from the District Court's judgment of conviction, entered following its denial of his motion for judgment of acquittal or for a new trial,[2] on these grounds: the indictment did not state a cause of action; there was insufficient evidence to sustain the jury's verdict; the District Court erred in its instructions to the jury, and, in permitting the prosecuting attorney, in his opening speech to the jury, to make prejudicial statements.

Section 659, among other things, makes it a crime to possess goods stolen in interstate commerce, from any of a number of enumerated places (station, platform, depot, etc.), with knowledge that they had been stolen.

The indictment in the instant case contained two counts.

The first count charges that on or about March 15, 1955, defendant had in

---

1. "§ 659. Interstate or foreign baggage, express or freight; state prosecutions

"Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any railroad car, wagon, motortruck, or other vehicle, or from any station, station house, platform or depot or from any steamboat, vessel, or wharf, or from any aircraft, air terminal, airport, aircraft terminal or air navigation facility with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight or express; or

"Whoever buys or receives or has in his possession any such goods or chattels, knowing the same to have been embezzled or stolen; or * * *" 18 U.S.C. § 659, 62 Stat. 729, as amended, 63 Stat. 91.

2. The opinion of the District Court is reported at D.C.M.D.Pa.1957, 157 F.Supp. 142.

his possession in Scranton, Pennsylvania, knowing it to have been stolen, a Bell and Howell movie projector; the projector was placed in interstate commerce on or about December 8, 1954, at Woodside, Long Island, New York, consigned to Clarksburg, West Virginia, and was stolen from the Railway Express Agency, Inc. platform in New York City, New York, on or about that date.

The second count charges that on or about December 15, 1954, defendant had two Rolleicord cameras in his possession in Scranton, Pennsylvania, knowing them to have been stolen; that one of the cameras ("camera No. 1") was placed in interstate commerce on or about November 24, 1954, at New York City, consigned to Fort Worth, Texas, and was stolen from the Railway Express Agency, Inc. platform in New York City on or about that date; the second camera ("camera No. 2") was placed in interstate commerce on or about September 21, 1954, at New York City, consigned to Warrington, Florida, and was stolen from the Railway Express Agency, Inc. platform in New York City on or about that date.

The evidence may be summarized as follows:

The movie projector, and the two cameras listed in the indictment, were placed by employees of the Railway Express Agency on its platforms in the state of New York during the latter part of 1954 in the course of shipment to destinations in distant states. They were stolen. They subsequently came into the possession of the defendant in Scranton. The defendant sold the projector and the two cameras to Joseph Hannis, a Scranton dealer in photographic equipment and supplies, through an intermediary, Alexander Gull, a clerk and delivery boy employed in a local grocery store. The projector, which had an invoice price of $489.33 and a retail price of $734.00 was sold for $375.00. Camera No. 1, which had an invoice price of $78.30 plus a federal excise tax of $7.83, and a re-

tail price of about $148.00, was sold for $75.00. Camera No. 2, which had an invoice price of $74.40 plus a federal excise tax of $7.45, was sold for $75.00.[3] The defendant paid Gull commissions for making the sales: $25.00 for the projector, $10.00 for camera No. 1 and $15.00 for camera No. 2.

Gull, in testifying to the sales, said that the defendant had delivered the projector to his home and that he had picked up the two cameras at the defendant's house. He also testified that the defendant had asked him to withdraw a confession which he had signed and given to FBI agents and that defendant had told him he was going to deny the sales of the cameras.

An FBI agent testified that when he questioned defendant relative to the cameras during the course of an investigation in July, 1955, the defendant said he had neither bought nor sold any cameras within a year from the date of the questioning. On that score Hannis testified that he purchased camera No. 1 on or about December 17, 1954 and camera No. 2 at the end of February or early in March, 1955.

■ We will first direct our attention to the specific instructions in the District Court's charge to the jury which the defendant asserts were prejudicial.

At one point in its charge to the jury the District Judge stated:

"Now in this particular kind of charge, the charge, as we say, is that he had in his possession certain articles knowing the same to have been stolen, that is the charge, *possession of recently stolen goods casts upon those holding them the burden of explaining their possession,* and a jury may infer guilty knowledge of the theft, in the absence of explanatory facts and circumstances consistent with innocence.

"Now we are also obliged to charge that in this country, because of the presumption of innocence, Congress has passed a statute and

3. There was no testimony as to the retail price of camera No. 2.

we are required to say to you that the defendant has failed to testify. Mr. Brennan pointed that out to you in his closing. The fact that the defendant did not testify in this case should not create any presumption of guilt against him nor constitute any admission on his part. It should not have any influence on you in arriving at your verdict. His guilt or innocence is to be determined by you from the evidence which was introduced in the case and from that alone.

"Now I say that is the law, but I also say that it is the law that *possession of recently stolen goods casts upon those holding them the burden of explaining their possession,* and a jury may infer guilty knowledge of the theft, in the absence of explanatory facts and circumstances consistent with innocence.

"The defendant has a right under the statute and under the law to remain silent and from the mere fact that he does not testify you are not to draw any improper inferences." (Emphasis supplied.)

With reference to this instruction we agree with the defendant that it constituted prejudicial error.[4]

■■ An essential element of proof of a violation of Section 659 is that the defendant knew that the goods of which he was in possession were stolen, but it is clear that such knowledge may be proved by circumstantial evidence.[5] Unexplained possession of recently stolen goods permits the jury to infer that the possession is guilty possession; that the defendant knew that the goods were stolen.[6] It is not necessary to establish

that defendant knew the goods were in interstate commerce when they were stolen.[7]

However, as Judge Learned Hand pointed out in United States v. Sherman, 2 Cir., 1948, 171 F.2d 619, it is reversible error for the trial judge to charge a jury in possession of stolen goods cases that there is a "presumption" of defendant's guilty knowledge of the theft. Said Judge Hand (at page 624):

"While we have held a number of times that the jury may find in the accused's unexplained possession of stolen goods enough evidence to convict, we have never intended to indicate that the jury should be directed that it was required by a rule of law to make this inference. In discussions among lawyers and judges of the difference between a permissible inference and a presumption, the terminology may be unimportant. But the jury may be misled by the word 'presumption'; and here it may have interpreted that word as far stronger than a permissible inference."

In Barfield v. United States, 1956, 229 F.2d 936, the Fifth Circuit cited and applied Judge Hand's holding. In that case the trial judge had charged the jury that "proof that a defendant was in possession of property recently stolen raises a presumption of guilty knowledge which in the absence of explanation may warrant conviction." That instruction was held to be reversible error.

Said the Court, (at pages 939-940):

" * * * The court charged the jury, in substance, that possession

4. Following completion of the District Court's charge defendant's counsel specifically excepted to the twice-repeated instructions as to defendant's "burden of explaining" possession without response from the Court. The defendant raised the point in his motion for judgment of acquittal or a new trial.

5. Melson v. United States, 4 Cir., 1953, 207 F.2d 558, 559; Pearson v. United

States, 6 Cir., 1951, 192 F.2d 681, 689; United States v. O'Brien, 7 Cir., 1949, 174 F.2d 341, 345; United States v. Danzo, 2 Cir., 1947, 164 F.2d 200.

6. Pearson v. United States, supra.

7. Clark v. United States, 5 Cir., 1954, 213 F.2d 63, 64; United States v. Sherman, 2 Cir., 1948, 171 F.2d 619, 623.

of recently stolen property raises a *presumption* of guilty knowledge.

" * * * What the court was dealing with was an inference rather than a presumption. The distinction is pointed out by Professor Jones who says:

" 'In proper strictness, as indicated above a "presumption" is a mandatory deduction, while an "inference" is a permissible deduction which the reason of the jury makes without an express direction of law to the effect.' Jones, Commentaries on Evidence, 2d Ed. § 27, Vol. I, p. 54."

In Balman v. United States, 8 Cir., 1938, 94 F.2d 197, 199, the trial judge had charged the jury as follows:

"Proof that the defendant was in possession of property recently stolen raises a presumption of guilty knowledge in the absence of an explanation, and it is for you to determine whether the defendant's explanation given by him in this case is sufficient to overcome the presumption * * *"

In holding this instruction to be prejudicial error the appellate court said (at page 199):

"The vice that has been held to inhere in instructions of this nature is that such possession unexplained by the defendant creates a presumption of law, thereby shifting the burden of proof and imposing upon the defendant the duty 'to establish his innocence to obtain an acquittal'. Ezzard v. United States, 8 Cir., 7 F.2d 808, 811."

The Sixth Circuit is in accord with the cases above cited.

In Kasle v. United States, 1916, 233 F. 878, at pages 889, 890, with respect to an instruction similar to that given by the trial judge in the Balman case, the Court said:

"The charge is broad and unqualified; it states as matter of law 'that the possession of stolen property imputes knowledge in the posssessor that it was and is stolen'; and the defendant is at once put upon his proofs to free himself of that presumption * * * *The effect of this, as it seems to us, was to impose the burden upon defendant to prove his innocence,* in case the jury should find the goods had in fact been stolen." (Emphasis supplied.)

In the instant case the District Court, as appears in the quoted portion of its charge, twice instructed the jury that "possession of recently stolen goods casts upon those holding them the burden of explaining their possession, and a jury may infer guilty knowledge of the theft, in the absence of explanatory facts and circumstances consistent with innocence."

Those instructions went much further than the "presumption" instructions which were held to be reversible error in the cases above cited.

Without more they required reversal of defendant's conviction and direction of the grant of a new trial.

The District Court in its opinion, M.D. Pa.1957, 157 F.Supp. 142, 143 cited Yielding v. United States, 5 Cir., 1949, 173 F.2d 46, 48, as supporting the instructions which it gave. In that connection we need only point to two circumstances: (1) what was said in Yielding as to presumptions was merely stated by the Fifth Circuit in holding the verdict of the jury to have been based on ample evidence—there was no instruction as to presumptions by the trial court in that case, and, (2) in Barfield v. United States, supra, some seven years later, the Fifth Circuit specifically held that the presumption instruction as given by the trial court was prejudicial error.

The other cases cited by the District Court in its opinion in support of its mooted instructions as to burden of proof are inapposite. In none of them did the trial judge instruct the jury that the defendant had the burden of explaining possession of stolen goods nor even make mention of a "presumption" of guilty knowledge.

In connection with the District Court's instructions in the instant case as to defendant's "burden of explaining" possession, it must be noted that earlier in its charge, following its reading of the indictment, it had stated:

"Now I say to the jury that that is what is called an indictment. An indictment is handed down by the Grand Jury, *the test being whether or not in their judgment there is probable cause to call upon someone for an answer.*" (Emphasis supplied.)

■ While this statement was immediately followed by the admonition that " * * * an indictment is not any evidence at all against this defendant", it was erroneous in that it negated the presumption of innocence and in effect placed the burden of proving his innocence upon the defendant. Considered in the light of the District Court's subsequent instructions as to defendant's "burden of explaining" possession of the stolen goods, it was definitely prejudicial error.[8]

■ Attention must be directed, too, to the District Court's final instructions that the issues for the jury were as follows:

"Was there stealing from interstate commerce? Was there a receiving of stolen goods knowing them to have been stolen."

These instructions were given before the jury was sent out, at the end of additional instructions which were given as a result of exceptions taken to the charge.[9]

The instruction as put: "Was there stealing from interstate commerce?" was erroneous.

As we held in United States v. Manuszak, 1956, 234 F.2d 421, 423: "Under this statute [Sect. 659], it is not a federal crime to steal goods from an interstate shipment of freight *unless the goods are taken from one of the specifically enumerated places or facilities* [railroad car * * * or other vehicle * * * *platform* or depot, etc.] *Other thefts, although of goods which are part of an interstate shipment, are not federal crimes.*" (Emphasis supplied.)

Here, the government was required to prove more than a mere "stealing in interstate commerce", and guilty possession of the stolen merchandise. It was required to prove that the merchandise was stolen from a "platform" as specified in Section 659.

Nowhere in its charge did the District Court instruct the jury that the evidence had to establish the theft of the goods from a platform.

■ Additionally, defendant contends that the District Court "instructed the jury that they could 'assume' that the goods were stolen even if there was 'no

---

8. Exception was not taken by defendant to the statement but it may be considered here because it was fundamental error.

9. The final instructions were immediately preceded by this statement by the District Court:

"Now then there is some fear that perhaps the jury may misunderstand the Court when we read out this whole statute. We read out the whole statute because that is the statute that Congress passed. However, we must stress to the jury that the only part that refers to this case is a possibility that one who steals from interstate commerce certain objects could be guilty of a crime, *or that one who receives articles which were in interstate commerce and stolen from interstate commerce and he then knows they were stolen,* not necessarily stolen

from interstate commerce, that he knew they were stolen, that he could be guilty of a crime. All the rest is in addition to the actual * * *." (Emphasis supplied.)

In the main body of its charge the District Court, after reading Section 659 to the jury, had stated:

"Now then, we have read quite a bit of language from that, but substantially that statute charges that if any one steals from interstate commerce articles in interstate commerce they would be guilty of an offense.

"They also charge that any one who receives or has in his possession articles which were *stolen in interstate commerce* and if he knew that they were stolen then he would be guilty of an offense." (Emphasis supplied.)

evidence at all of the stealing' ". The contention is without merit. The instruction in which the word "assume" appears clearly shows that the District Court was referring to the government's contention that the jury could "assume" from the evidence that the goods had been stolen. Again, the instruction, in which the phrase "even if there was no evidence at all of the stealing" appears, makes it clear that the reference was to the absence of the testimony of an "eye witness" to the theft.

It may be noted parenthetically that no objection was made by the defendant to the foregoing instructions at the time they were given.

There remains for disposition these contentions by the defendant:

(1) government counsel was permitted to make prejudicial statements in his opening statement to the jury;

(2) there was insufficient evidence to sustain the jury's verdict;

(3) the indictment failed to state a cause of action;

(4) there was a fatal "variance" between the allegations in Count 1 and the government's proof.

As to the first of these contentions:

In his opening statement, over repeated objections by defendant, government counsel was permitted to tell the jury that during the course of the investigation which preceded defendant's trial, Gull, the grocery clerk and delivery boy, had made statements to the Federal Bureau of Investigation consonant with the testimony Gull was to give at the trial. The contents of Gull's statement, severely damaging to defendant, were described to the jury. Gull's statements were never offered in evidence.

■ We agree with the defendant that government counsel should not have been permitted by the District Court to describe the contents of Gull's state-ments to the FBI in view of the fact that Gull was present and ready to testify, and did in fact testify, in complete accord with his prior statements. However, the District Court's error in permitting government counsel to indulge in tactics which can scarcely be condoned cannot be regarded as prejudicial in that it could not reasonably be said to have influenced the jury's verdict.

■ As to defendant's second contention—that the evidence was insufficient to sustain the verdict in that "there was no proof of theft from any of the places enumerated in the statute" (Section 659), viz., "platforms", as charged in the indictment, and that he is therefore entitled to a judgment of acquittal; the contention is without merit.

It is fundamental that on appeal the evidence must be viewed in the light most favorable to the government and that is so even though a verdict of guilty is based on circumstantial evidence.[10] It is well-settled too "that knowledge that goods have been stolen may be inferred from circumstances that would convince a man of ordinary intelligence that this is the fact."[11] "Possession of the fruits of a crime, recently after its commission, justifies the inference that the possession is guilty possession * * * "[12] and that is particularly so when the possession is unexplained.[13]

There was ample evidence from which the jury could have found in this case that the goods involved in the indictment (1) were stolen from platforms on which they had been placed in the course of movement in interstate commerce, and (2) that the defendant was in possession of such goods, knowing them to have been stolen.

While it is true that there was no eye witness to the thefts of the separate items from the platforms, the government established by uncontradicted tes-

10. United States v. McCurry, 3 Cir., 1957, 248 F.2d 116.

11. Melson v. United States, supra, note 5, and the other cases therein cited.

12. Wilson v. United States, 1896, 162 U.S. 613, 619, 16 S.Ct. 895, 898, 40 L.Ed. 1090.

13. Pearson v. United States, supra, note 5.

timony that they had been placed on the platforms in interstate commerce and that they had never reached their destinations. That the goods had been stolen and that the defendant knew this "were facts fairly inferable"[14] from his possession of them under the unimpeached testimony.

Defendant places strong reliance on United States v. Moynihan, 3 Cir., 1919, 258 F. 529. While it was there held that the government was obliged by the statute to prove that the merchandise had been stolen from the platform on which it had been placed, it pointed out that proof that the merchandise "was not lawfully taken from that platform * * * would be an important item of evidence to establish the ultimate fact that it had been stolen from the platform * * *" (at page 532).

Here employees of the Railway Express Agency testified that they had placed the goods on platforms,[15] and, in the language of the Moynihan case, there was nothing to show that they had "lawfully left the platform of the express company * * * by reference to the express company records."

The unexplained appearance in defendant's possession in Scranton, Pennsylvania, of goods placed on platforms in New York for shipment to such distant places as Fort Worth, Texas, Clarksburg, West Virginia, and Warrington, Florida, and his sales of the goods for about half their retail price through a grocery clerk and delivery boy were facts from which the jury could have properly found that the goods had been stolen from the platforms and that defendant knew they had been stolen.

As to defendant's third contention—that the indictment failed to state a cause of action: we find it is without merit. The crux of this contention is that the indictment failed to charge that the merchandise "was stolen after having been placed in interstate commerce", that, "for all the indictment says the articles may have been stolen from the platforms and then placed in interstate commerce * * *." With respect to that contention it need only be said that the indictment clearly states in sequence the dates when, and the places where, the articles were placed in interstate commerce and their theft. Additionally, the indictment describes the stolen articles and identifies them by serial numbers, and avers the approximate dates on which the defendant came into possession of the stolen articles with knowledge that they were stolen. The indictment fully states a cause of action. As we said in United States v. Howell, 3 Cir., 1956, 240 F.2d 149, 153:

"An indictment is sustainable if the 'offense be described with sufficient clearness to show a violation of law, and to enable the accused to know the nature and cause of the accusation and to plead the judgment, if one be rendered, in bar of further prosecution for the same offense.' United States v. Behrman, 258 U.S. 280, 288, 42 S.Ct. 303, 304, 66 L.Ed. 619."[16]

Defendant's fourth and final contention—that there was a fatal "variance" between the allegations in Count 1 and the government's proof with respect to that Count—is based on the fact that in Count 1 it was charged that the movie projector had been placed on a Railway Express Agency platform in New York

---

14. United States v. Danzo, supra, note 5. There the goods were delivered to Pier 48, North River, Brooklyn and were found a week later in possession of the defendants; a situation analogous to that in the instant case except for the time element.

15. Edward Radigan, a Railway Express Agency driver, testified that he had placed a carton containing the movie projector on the platform in the Agency's PXT Terminal in Long Island City. William Beaton, a Railway Express Agency driver, testified that he placed the shipments of which the two cameras were a part, on the Agency's platform in its depot at 11th Avenue and 42nd Street, New York City.

16. To the same effect see United States v. Smith, 3 Cir., 1956, 232 F.2d 570, 572.

City while the proof was that it was placed on the Agency's platform in its PXT Terminal in Long Island City, New York.

Defendant in making this contention is long on argument and short in his knowledge of geography.

Long Island City has been a part of the Borough of Queens, New York City since 1898 [17] and we can, of course, take judicial notice of that fact.

In summary, we are of the opinion that the District Court did not err in denying defendant's motion of acquittal in its Order of November 27, 1957, but that it did err in denying his motion for a new trial in the Order referred to, requiring direction of a new trial.

For the reasons stated, the judgment of conviction of the District Court dated December 17, 1957 will be reversed and the cause remanded for further proceedings consistent with this opinion.

17. "Long Island City, formerly a city of Queens County, New York, U. S., and since 1898 a part of the borough of Queens, New York city."  Encyclopaedia Britannica, Vol. 14, p. 381, 1954 ed.