**UNITED STATES of America**

v.

George **WHITFIELD** et al.

Crim. A. No. 73–715.

United States District Court,
E. D. Pennsylvania.

June 14, 1974.

Joseph M. Fioravanti, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Barbara R. Muehleib, Morris Wolf, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Defendants George Whitfield and Robert F. Johnson were found guilty by a jury on a three-count indictment involving theft and possession of stolen goods constituting an interstate shipment, in violation of 18 U.S.C. § 659. More specifically, both defendants were found guilty on Count I of conspiracy to possess goods stolen from interstate commerce, in violation of the general conspiracy statute, 18 U.S.C. § 371. Defendant Whitfield alone was charged and found guilty on Count II of stealing with intent to convert goods constituting an interstate shipment. And both defendants were found guilty on Count III of possession of goods stolen from interstate commerce.[1]

Whitfield and Johnson have moved for judgments of acquittal and for new trials. Judgments of acquittal as to Whitfield and Johnson are granted on Count I charging conspiracy to possess goods stolen from interstate commerce, but judgment of acquittal is denied Whitfield on Count II charging him with stealing with intent to convert goods constituting an interstate shipment, and judgments of acquittal are denied both defendants on Count III charging them with possession of goods stolen from interstate commerce. The motions for new trial by both defendants are denied.

In reviewing the record we are obliged to view the evidence in the light most favorable to the government.[2] Thus the testimony discloses that on the night of February 21, 1973, the Florida-Texas Freight Company in Philadelphia was burglarized and twenty cartons of stereo tapes, constituting an interstate shipment,[3] were stolen. As a result of an anonymous telephone call to Agent Dillard Howell of the Federal Bureau of Investigation (F.B.I.) on February 22, 1973, at 8:21 A.M. a surveillance operation was set up in the area of 27th and Latona Streets, Philadelphia, to observe activity in and around a parked Ryder rental van which contained the twenty cartons of stolen tapes. At about 12:57 P.M. an individual identified by three of the surveillance agents as defendant Whitfield arrived at the surveillance location in a light blue Plymouth which he parked directly across the street from the Ryder van. Whitfield walked over to the Ryder van looked inside and then proceeded to walk down the street where he entered a row house on Latona Street. Shortly thereafter Whitfield exited the house and proceeded back to the corner of 27th and Latona. At approximately 1:08 P.M. F.B.I. Agent Bierman observed another vehicle arrive at the scene. Whitfield who was standing on the corner approached the newly arrived vehicle, placed his hand inside the window and then pulled it out, apparently

---

1. Defendant John Oliver along with defendants Whitfield and Johnson was charged on Count I and Count III of the indictment, but was found not guilty on both counts by the jury.

2. United States v. McClain, 469 F.2d 68 (3 Cir. 1972).

3. The shipment of tapes originated in Pitman, New Jersey, and was delivered to the Florida-Texas Freight Company in Philadelphia, Pennsylvania, for forwarding to its ultimate destination in Opalocka, Florida. The value of the shipment was in excess of $100.

clenching something in his fist. He then proceeded back to the Ryder van, entered the vehicle and started the engine. At this point Agent Bierman blocked the intersection with his vehicle. Whitfield shut off the engine, climbed out of the truck and proceeded over to the agent. Bierman then identified himself and requested Whitfield to come around to the passenger side of his vehicle to be interviewed. At this point Whitfield fled north on 27th Street. Subsequently, the F.B.I. agents removed the stolen cartons from inside the Ryder van and took them to the F.B.I. office in Philadelphia to be forwarded to the F.B.I. Laboratory in Washington, D. C. for latent fingerprint processing. The agents examined the Ryder van for possible latent fingerprints.

The evidence against Whitfield with respect to Counts I and III (conspiracy to possess and possession) consisted primarily of the testimony of the three surveillance agents[4] who identified Whitfield as being in and around the van parked at 27th and Latona Streets on February 22, 1973. In addition, James K. Howell, fingerprint expert for the F.B.I., testified that Whitfield's fingerprints were found on three of the twenty cartons of stolen tapes found inside the Ryder van that were sent to the F.B.I. Laboratory for processing.

Count II of the indictment charges only Whitfield with the actual theft of the goods. The evidence with respect to this count consisted primarily of the testimony of James K. Howell who identified a latent palmprint discovered on a notebook found at the scene of the burglary as identical to a palmprint obtained from Whitfield.

The evidence against defendant Johnson on Counts I and III (conspiracy to possess and possession) also consisted primarily of the testimony of Agent James K. Howell who identified Johnson's fingerprints on four of the twenty stolen cartons in the rear of the van. Latent prints of Johnson were also found on the driver's side window and the passenger's side rear view mirror of the van itself.

In support of their motions for a new trial defendants allege several grounds for error. We shall discuss only those which we consider meritorious.

Defendant Whitfield contends it was error to allow into evidence finger and palm prints taken from him on July 30, 1973, by Agents Dillard Howell and Armand Gagne. This contention was the subject of a two-day suppression hearing held immediately prior to the trial. The testimony at the suppression hearing established that at the time the lifts were taken, Whitfield was lawfully incarcerated on an unrelated state charge at the Philadelphia Detention Center. Whitfield was warned properly as to his rights by the agents and verbally consented to have his major case prints taken. The prints were taken for the purpose of comparing them to latent prints found on the notebook taken from the Florida-Texas warehouse by the agents following the burglary.

Whitfield argues that the taking of his major case prints on July 30, 1973, violated rights guaranteed him under the Fourth, Fifth and Sixth Amendments to the Constitution. More specifically, Whitfield claims that the agents' failure to obtain a warrant prior to taking the prints amounted to an unreasonable search and seizure in violation of the Fourth Amendment and that the taking of the prints in order to compare them to lifts taken from the scene of the theft compelled him to be a witness against himself in violation of the Fifth Amendment. Whitfield cites Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

In *Davis*, the Supreme Court held that fingerprints taken from a defendant without a warrant or *other judicial process* were inadmissible. It noted, however, that a lesser showing of probable cause for detention for fingerprinting may be needed since the resulting

---

4. The most damaging testimony by far was that of Agent Bierman.

intrusion is somewhat less compared to other types of seizures. The detention in *Davis* of the more than twenty individuals was for no other reason than to facilitate the taking of their fingerprints. Since no probable cause whatsoever existed for the detention it was deemed to be unreasonable, and, accordingly, the resulting fingerprints obtained were held inadmissible.

In Beightol v. Kunowski, 486 F. 2d 293 (3 Cir. 1973), the Court of Appeals for the Third Circuit discussed the impact of United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) upon *Davis*. Although the taking of fingerprints does not violate the privilege against self-incrimination, the unlawful detention of a person for the purpose of obtaining those fingerprints is still prohibited. The court in *Beightol* states: "The issue, then, is whether the detention on January 31, 1972 was lawful." [5] Thus we conclude from *Beightol* that the taking of fingerprints from a defendant while lawfully incarcerated does not violate the Fourth Amendment. The mere fact of lawful incarceration is a sufficient basis to permit the taking of prints. The prints taken from Whitfield on July 30, 1973, while lawfully incarcerated at the Philadelphia Detention Center were therefore admissible.

We see no merit to Whitfield's second contention that the admission of his major case prints violated his Fifth Amendment right against self-incrimination. The Supreme Court has held that the protection of the Fifth Amendment applies only to compelled testimonial or communicative evidence and not to mere identifying physical characteristics such as fingerprints. United States v. Dionisio, *supra*; Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). We do not perceive any distinction between fingerprints and palmprints for either Fourth or Fifth Amendment purposes.

Lastly, defendant Whitfield argues that his Sixth Amendment right to counsel was violated by the admission of the July 30, 1973 prints. The taking of fingerprints has not been held to be a critical stage of the prosecution. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Schmerber v. California, *supra*. Indeed since there was no Fourth Amendment violation and defendant had no right to withhold his prints under the Fifth Amendment privilege, we fail to see any requirement for the presence of counsel.

Whitfield next argues that we erred by refusing to supply him with a transcript of the preliminary hearing held on July 19, 1973, before the Honorable Richard A. Powers, III, United States Magistrate, at which time charges of theft in connection with the above offense were dismissed.[6] At the end of the suppression hearing and immediately prior to commencing the trial, counsel for Whitfield requested the Court to provide a transcript of the above hearing allegedly for the purpose of impeaching the testimony of F.B.I. Agent Dillard Howell. At the time the request was made counsel had available to him the tape recording of the hearing. We requested counsel, who listened to the tape during the suppression hearing, to make an offer of proof as to any inconsistent statements made by Agent Dillard Howell. Counsel was unable to make any such showing, and accordingly we denied the motion.

---

5. *Beightol* involved the issue of whether the Pennsylvania State Police had the power to arrest a person free on bail, without a warrant, for the sole purpose of obtaining fingerprints and a mugshot. The court found this to be an unlawful detention. Defendant Whitfield, however, was lawfully detained at the time his prints were taken.

6. At the time these charges were dismissed the F.B.I. did not have the lift of Whitfield's palmprint which was subsequently compared and identified as being identical to the palmprint found on the notebook at the scene of the burglary.

One of the essential elements of the crime of possession under 18 U.S.C. § 659 is that the defendant knew that the goods he possessed were stolen. Defendant Johnson alleges that we erred by instructing the jury that unexplained possession of recently stolen property can be an inference in light of surrounding circumstances that the defendant knew the goods were stolen. This instruction, Johnson contends, shifts the burden of proof to the defendant and requires him to bring forth testimony as to his innocence. Johnson cites United States v. Allegrucci, 258 F.2d 70 (3 Cir. 1958), for support of his contention. In *Allegrucci* the District Court instructed the jury that "possession of recently stolen goods cast upon those holding them the burden of explaining their possession, and a jury may infer guilty knowledge of the theft in the absence of explanatory facts and circumstances consistent with innocence." 258 F.2d at 74. The Circuit Court of Appeals found such language to be prejudicial error and reversed.

We believe the language used in our charge to the jury [7] in the instant case can be distinguished from the language used by the District Court in the *Allegrucci* case,[8] and that our instruction comports with the requirements of the Third Circuit Court of Appeals as expressed in United States v. Bamberger, 456 F.2d 1119, 1132–1135 (3 Cir. 1972), cert. denied 413 U.S. 919, 93 S.Ct. 3067, 37 L.Ed.2d 1040 (1973), and United States v. Rispo, 470 F.2d 1099, 1101–1102 (3 Cir. 1973). The fingerprint evidence introduced by the government through the testimony of fingerprint expert James K. Howell allowed the jury to find that Johnson had exercised possession over the stolen goods. Our instruction permitted the jury to draw an inference in light of the surrounding circumstances that Johnson had knowledge that the goods in the back of the van were stolen. Such an inference does not shift the burden of proof upon the defendant to prove his innocence but merely leaves the jury free to either accept or reject the inference in whole or in part.[9] The government is still required to prove each element of the crime beyond a reasonable doubt. As long as there exists proof of the basic facts, in this instance possession of the recently stolen goods, the law in this

---

7. On this issue we charged the jury as follows:

"Possession of property recently stolen, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find in the light of surrounding circumstances shown by the evidence in the case that the person knew the property had been stolen, and possession of property recently stolen, if not satisfactorily explained is ordinarily a circumstance from which the jury may reasonably draw the inference and find in the light of surrounding circumstances shown by the evidence in the case that the person in possession, not only knew it was stolen property, but also participated in some way in the theft of the property."

"If you find beyond a reasonable doubt from the evidence in the case that the stereo tapes described in the indictment were stolen and that while recently stolen, the property was in the possession of the defendants or any of them, you may, from those facts, draw the inference, not only that the stereo tapes were possessed by the defendant or any of them, with knowledge that the property was stolen, but also, that the defendants participated in some way in the theft of the property, unless possession of the recently stolen property by the accused is explained to the satisfaction of the jury by other facts and circumstances in evidence in the case." Notes of Testimony at pp. 6–50 and 6–51.

8. The *Allegrucci* case cited in defendant Johnson's brief was decided by the Third Circuit Court of Appeals on July 16, 1958. The same case again came before the Court of Appeals four years later. United States v. Allegrucci, 299 F.2d 811 (3 Cir. 1962). In the second case the trial judge charged the jury as to possible inferences to be drawn from possession of recently stolen goods. The language used in the second case apparently met with approval by the Court of Appeals. 299 F.2d at 814–815.

9. See United States v. Gardner, 454 F.2d 534 (9 Cir. 1972), cert. denied 409 U.S. 867, 93 S.Ct. 164, 34 L.Ed.2d 116 (1972).

Circuit permits such an instruction to be given to the jury.[10]

■ We are satisfied that no error was committed which would require the granting of a new trial.[11] We are also satisfied that the weight of the evidence is sufficient to support the jury's verdicts of guilty on both Counts II and III of the indictment.

Although our determination of the Whitfield and Johnson motions obviates the need to address the next allegation of error, because of the paucity of authority in this circuit and the vigor with which it was argued, we believe that this issue merits discussion.

Defendants contend that we erred by refusing to charge the jury that "knowledge by the defendant of the interstate character of the shipment is an essential element of conspiracy to possess goods stolen from interstate commerce."[12] The circuits are in complete agreement that no such showing is required for a defendant to be convicted of the substantive offense. However, when the charge is conspiracy a divergence of opinion emerges. Since the Court of Appeals for this circuit apparently has not yet had occasion to decide this issue, we must turn to the views held by some of the other circuit courts.

The dispute focuses upon (1) whether knowledge on the part of the defendant of the interstate nature of the goods is viewed as an element of scienter, requiring proof of defendant's anti-federal intent, either actual or implied, or (2) the interstate nature of the goods constitutes a mere prerequisite for establishing federal jurisdiction. The former view, if adopted, involves further dissection and requires a determination as to whether the anti-federal intent necessary to support the conspiracy conviction can be established (1) only by specific or actual knowledge on the part of the defendant that the goods involved are of an interstate nature, or (2) by merely showing the defendant's disregard for the nature or source of the goods.

Counsel for defendants would require the government to prove that Whitfield and Johnson had actual knowledge of the interstate nature of the goods and in support of such contention cite United States v. Vilhotti, 452 F.2d 1186 (2 Cir. 1971), cert. denied 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972). In *Vilhotti*, the Second Circuit reversed a conspiracy conviction[13] because the trial judge refused, "as requested by counsel, to charge the jury that in order to convict for conspiracy, they would have to find that the defendants not only knowingly bought, received or possessed goods which were stolen but that defendants knew that they were stolen from interstate commerce." 452 F.2d at 1189. The *Vilhotti* court then proceeded to note the government's concession that cases in the Second Circuit have uniformly held that a conspiracy to violate 18 U.S.C. § 659 and similar statutes requires the specific intention to buy, receive or possess goods which defendants know were stolen from interstate commerce. 458 F.2d at 1189.

More recently, in United States v. Alsondo, 486 F.2d 1339 (2 Cir. 1973) cert. granted United States v. Feola, 416 U.S. 935, 94 S.Ct. 1932, 40 L.Ed.2d 285 (1974), the Second Circuit again dealt with the same issue but with respect to a different substantive statute. In *Alsondo*, defendants were charged, *inter alia*, with violation of 18 U.S.C. § 111, assaulting a federal officer, and 18 U.S.C. § 371, conspiracy to commit the above

---

10. United States v. Bamberger, *supra* at 1133–1135. See also United States v. Polesti, 489 F.2d 822, 824–825 (7 Cir. 1973).

11. We have considered the other contentions raised by the defendants and have found them to be without merit.

12. Defendant Johnson's point for charge 6.

13. The defendants were charged with violation of 18 U.S.C. § 659, par. 2 (buying, receiving or having in their possession chattels stolen from an interstate shipment) and 18 U.S.C. § 371 (conspiring to buy, receive or possess such chattels).

offense. The jury returned verdicts of guilty and the defendants appealed alleging the trial judge erred in his charge to the jury.[14] The court reversed, holding that specific knowledge of the official federal capacity of the intended assault victims must be proved to establish the alleged conspiracy though not required to convict for the substantive offense.[15]

A better view we believe is held by the Eighth Circuit as expressed in Nassif v. United States, 370 F.2d 147 (8 Cir. 1966). In *Nassif*, defendants were found guilty of violating 18 U.S.C. § 659, stealing, taking and carrying away with intent to convert goods out of interstate commerce, and 18 U.S.C. § 371, conspiracy to commit the substantive offense. Although the court acknowledged the necessity for the prosecution to establish that the scope of the conspiracy included an anti-federal intent, it did not require that such intent be proven only by actual knowledge on the part of the defendant that the goods were involved in interstate commerce. Rather, the court allowed the anti-federal intent or knowledge that the goods were taken from interstate commerce to be inferred or implied:

"Co-conspirators seeking illicit gain from conversion of another's property seldom become selective as to whether the goods they steal flow in commerce or not. Clearly, if the plan was to steal merchandise only from a known defined local source Nassif might have been guilty of conspiracy to steal or conceal, which only a state may punish. But if the scheme is to steal goods, wherever they may be found, and in fact, goods are stolen from interstate commerce, then we feel the

scope of the conspiracy can be broad enough to imply intent to commit a federal crime."

370 F.2d at 153.

The *Nassif* approach has found support in other circuits.

In United States v. Cimini, 427 F.2d 129 (6 Cir. 1970), defendants were convicted for violations of 18 U.S.C. § 659, possessing goods knowing them to have been stolen, and 18 U.S.C. § 371, conspiracy to steal, conceal and convert to their own use goods moving as or constituting an interstate shipment. The Sixth Circuit Court of Appeals, citing the *Nassif* decision, affirmed.

"As for this conspiracy charge it was necessary to show that the conspiracy encompassed an anti-federal intent, or that its scope was sufficiently broad as to include an anti-federal intent, i. e. intent to steal from interstate commerce or to steal goods without regard to their source. Nassif v. United States, 370 F.2d 147, 152 (8th Cir.). It is beyond dispute that the conspiracy involved in this case was sufficiently broad."

427 F.2d at 130. See also United States v. Garafola, 471 F.2d 291 (6 Cir. 1972).

The Fifth Circuit in United States v. McGann, 431 F.2d 1104 (5 Cir. 1970) cert. denied 401 U.S. 919, 91 S.Ct. 904, 27 L.Ed.2d 821 (1961), states:

"There may be an implied understanding that the property could be embezzled or stolen from any source that might prove convenient or accessible, and that would include an interstate shipment."

431 F.2d at 1108. The court proceeds to quote from the *Nassif* opinion and hold

---

14. The trial judge charged: "[I]t is not necessary for the government to prove that the defendants or any of them knew that the persons they were going to assault or impede or resist were federal agents. It's enough, as far as this particular element of the case is concerned, for the government to prove that the defendants agreed and conspired to commit an assault."
486 F.2d at 1342

15. As previously noted the United States Supreme Court recently granted review in this case. See United States v. Feola, 416 U.S. 935, 94 S.Ct. 1932, 40 L.Ed.2d 285 (1974). Should the question presented be answered by the Court, it would appear that such answer would also be determinative where other statutes, e. g. 18 U.S.C. § 659, constitute the underlying substantive offense.

that there was sufficient anti-federal intent to support the conspiracy conviction.[16]

All of these circuit courts including the Second Circuit agree that some type of anti-federal intent must be shown in order to prove conspiracy. The rationale underlying the requirement for proving an anti-federal intent is that 18 U.S.C. § 371 makes it unlawful to conspire to commit a crime against the United States.[17] The conclusion, therefore, is that in order to be guilty of conspiring to commit a crime against the United States the co-conspirators must realize or be aware that the crime which is the object of their conspiracy is a crime against the United States. This requires the co-conspirators to possess knowledge of the existence of the jurisdictional element of the crime in order to be guilty of conspiracy under § 371 for it is this jurisdictional element which makes the substantive crime one against the United States. It is only the Second Circuit, however, which requires that it be a specific or actual intent, i. e. that the defendant actually knows the interstate nature of the goods.

The second line of reasoning, i. e. that the interstate character of the goods constitutes a mere jurisdictional prerequisite finds support in the Ninth and Seventh Circuits. In United States v. Roselli, 432 F.2d 879 (9 Cir. 1970), the court rejected defendant's argument that there was insufficient evidence to support his conviction for conspiracy to violate 18 U.S.C. §§ 1952 and 2314 since the prosecution failed to establish that defendant agreed to use of interstate facilities and interstate travel and transportation.[18] The court could find no rational basis for requiring knowledge of the use of interstate facilities as an essential element of the conspiracy where it is not required as an essential element of the substantive offense. The essence of the offense under 18 U.S.C. § 371 the court states is an agreement to commit the substantive crime. Knowledge of the jurisdictional element is as irrelevant to the purposes of the general conspiracy statute as it is to the purposes of the substantive statutes. 432 F.2d at 892.

This rationale has also been adopted by the Seventh Circuit. In United States v. Thompson, 476 F.2d 1196 (7 Cir. 1973), the court, after considering the various cases decided in the Second Circuit, stated:

> "We find extremely persuasive the reasoning of the Ninth Circuit (432 F.2d at page 892) that proof of knowledge of the federal jurisdiction element is not required for conviction of the [conspiracy] offense."

476 F.2d at 1199. See also United States v. Polesti, 489 F.2d 822 (7 Cir. 1973).

■ In the case *sub judice* we note that our charge to the jury comports with the requirements of the Eighth Circuit as expressed in the *Nassif* opinion.[19] Therefore, we are not re-

16. See also United States v. Iacovetti, 466 F.2d 1147, 1154 (5 Cir. 1972), wherein the court stated: Where the plan, as in this case, is to sell stolen securities, regardless of whether they have an interstate or intrastate character, we believe that the scope of the conspiracy can be found broad enough to imply intent to commit a federal crime such as in Nassif v. United States, 8 Cir. 1966, 370 F.2d 147. . . .

17. 18 U.S.C. § 371 provides in pertinent part: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more

of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

18. The Ninth Circuit Court of Appeals stated: [K]nowing use of interstate facilities is not an essential element of either the substantive offenses or the conspiracy to commit them. . . .
432 F.2d at 890.

19. After denying defendant Johnson's point for charge # 6, we instructed the jury as follows:
The essential elements of the crime with which the defendants are charged under

quired to choose between the two basic theories concerning the interstate character of the goods.[20] We are, however, constrained to reject the theory expressed in *Vilhotti* and the other decisions of the Second Circuit which we believe result in an unwarranted extension of the anti-federal intent requirement.

■ Accordingly, we believe our charge to the jury with respect to the conspiracy count did not constitute error.

■ Finally, both Whitfield and Johnson have moved for judgment of acquittal with respect to the conspiracy count of the indictment. Defendant Johnson alleges the evidence is insufficient to sustain the conviction. After reviewing the record we must agree. The only evidence in the record against Johnson is that his fingerprints appear on four of the twenty stolen cartons and on two different places on the van. Whitfield's prints appear on three of the cartons. There is no other proof which links Johnson and Whitfield together.

It is well settled that an essential element of the crime of conspiracy is proof of the existence of an agreement. Ingram v. United States, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959); United States v. Ward Baking Company, 224 F.Supp. 66 (E.D.Pa.1963).

The agreement can be established through either direct or circumstantial evidence. It would appear, however, that the only proof of the existence of a conspiracy in the instant case would be an inference by the jury resulting from the fact of guilt of the substantive offense. We do not believe such an inference to be proper and accordingly we enter judgment of acquittal on the conspiracy conviction as to Johnson.

■ Since Oliver was acquitted of conspiracy charges by the jury and Johnson's motion is now granted on such charge and there is no evidence in the record of any unindicted co-conspirators, we must also enter judgment of acquittal as to Whitfield on Count I since a conspiracy requires two or more persons.

Count I and which must be established to your satisfaction beyond a reasonable doubt before you can find the defendants guilty under Count I are the following: First, you must find a conspiracy. Second, that such conspiracy encompassed the defendants unlawfully possessing 20 cartons of stereo tapes valued at more than $100. Third, that the twenty cartons of stereo tapes had been stolen from the Florida-Texas Freight Company, Philadelphia, Pennsylvania, while moving in interstate commerce on an interstate shipment of freight and express. Fourth, that the defendants knew that the said goods were stolen. Fifth, that the conspiracy included an intent to commit a federal crime. Notes of testimony, p. 6–38. After defining conspiracy and the other above mentioned essential elements we continued:

In respect to the requirement that the conspiracy include an intent to commit a federal crime, I instruct you that if the alleged agreement among the parties, which constituted the conspiracy, encompassed a plan to possess the stolen goods without concern from where the goods were stolen, or, was so broad that it would include possession of goods stolen from interstate commerce, then, you can find that an object of the conspiracy was to possess goods stolen from interstate commerce. Notes of testimony, p. 6–46.

20. The two basic theories are these: (1) The approach held by the Eighth, Sixth, Fifth Circuits, which requires the showing of an anti-federal intent on the part of the defendant who is charged with the conspiracy, allowing such intent to be established by showing defendant's disregard for the source of the stolen goods; and (2) the approach held by the Ninth and Seventh Circuits which views the interstate character of the goods as a mere jurisdictional prerequisite.