**UNITED STATES of America**

**v.**

**Walter KRUSE a/k/a Pat Waldman.**

Crim. No. 75–295.

United States District Court,
W. D. Pennsylvania.

June 1, 1976.

Craig McKay, Pittsburgh, Pa., for plaintiff.

Irving Green, New Kensington, Pa., for defendant.

## OPINION DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL, IN ARREST OF JUDGMENT AND FOR NEW TRIAL

KNOX, District Judge.

This case involving the possession and sale of counterfeit United States gold coins presents two questions. First, does the acquittal of defendant's only named co-conspirator necessitate that defendant be acquitted also? Secondly, does the newly discovered evidence, consisting of various airline, motel and gasoline receipts, justify a new trial in which defendant may show an alibi defense based on those documents? Under the facts of this case, we answer both questions in the negative.

Defendant Walter Kruse was convicted by a jury of Counts I and VI of the indictment. Count I alleges a conspiracy with Patricia Waldman and "others to the grand jury unknown" to possess and sell certain counterfeit United States gold coins in various specified transactions. Count VI, a substantive count, charges a sale to Melvin Schoener on March 9, 1976. Patricia Waldman was charged only under Count I and was acquitted. Defendant Kruse now moves for Judgment of Acquittal, in Arrest of Judgment, and for a New Trial.

## I. CONSPIRACY

Count I of the indictment alleges that defendants Walter Kruse and Patricia Waldman conspired together, along with persons unknown to possess and sell with intent to defraud certain counterfeit coins. The overt acts state specific sales to Melvin Schoener on five different occasions and a sale to Edward DeHaas and Kathleen Hays on another occasion. The indictment also lists as overt acts certain actions taken by defendants to complete the latter transaction. As previously stated, the jury convicted Walter Kruse on this count, but acquitted Patricia Waldman.

The record does not disclose any other conspirators specifically taking part in the overt acts stated in the indictment. Nor do the overt acts listed disclose any specific actions taken by other unknown co-conspirators in furtherance of the conspiracy.

In support of the conspiracy charge, however, the government produced Exhibit No. 15. This Exhibit is a yellow sheet of paper seized from Walter Kruse's wallet at the time of his arrest. The writing on Exhibit 15 is in two columns. The left-hand side is in Italian, and the right-hand side appears to be an English translation. Rather than being in complete letter form, the exhibit consists of a series of phrases and sentences, and appears to be a much-abridged Italian-English dictionary.

A coin expert testified that certain terms on this document were germane to the fabrication of counterfeit coins, e. g., "diameter of punch", "edge design", and "blank". (Tr. 305, 7). The first line of Exhibit 15 appears to say: "Can you manufacture Spanish silver for me?" This evidence was introduced to show that Kruse was in a position to secure coins from an Italian counterfeiter. The government also

showed that Kruse was the author of the English portion of the exhibit. (Tr. 291). The evidence further showed that all of the counterfeit coins involved in this case were uncirculated. (Tr. 336, 7). Some of the counterfeit coins were shown to have come from the same die. (Tr. 339).

■ By definition two or more persons must combine together to commit the crime of conspiracy. It is well established, however, that the conviction of other named members of a conspiracy is not needed to sustain the conviction of one member. One person alone can be convicted of conspiring with persons known or unknown. *Rogers v. United States,* 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951); *United States v. Fox,* 130 F.2d 56 (3d Cir. 1942); *United States v. Crum,* 404 F.Supp. 1161 (W.D.Pa.1975). Of course, the evidence in such cases must show that there were at least two conspirators. *United States v. Gardner,* 475 F.2d 1273 (9th Cir. 1974) cert. den. 414 U.S. 835, 94 S.Ct. 178, 38 L.Ed.2d 70; *United States v. Whitfield,* 378 F.Supp. 184 (E.D.Pa.1974) aff'd 3 Cir., 515 F.2d 507. Where the evidence of additional conspirators is insubstantial and one of two charged conspirators is acquitted, the conspiracy conviction of the other must fail also. *Gardner,* supra. Likewise, where one of three conspirators is acquitted by the jury and another by the court in post-trial motions, the third must be acquitted too, where there is no indication in the record of any unindicted co-conspirators. *Whitfield,* supra. As stated by the United States Supreme Court, "It is impossible in the nature of things for a man to conspire with himself" and conspiracy "imports a corrupt agreement between not less than two with guilty knowledge on the part of each". *Morrison v. California,* 291 U.S. 82, 54 S.Ct. 281, 78 L.Ed. 664 (1934).

■ Conversely, the conviction of some alleged conspirators does not fall merely because others named are acquitted, even though the conviction of those acquitted is logically required for the finding of guilty of those held. *United States v. Robinson,* 503 F.2d 208 (7th Cir. 1974) cert. den. 420 U.S. 949, 95 S.Ct. 1333, 43 L.Ed.2d 427; *U.*

*S. v. Fox,* supra; *United States v. Austin-Bagley Corp.,* 31 F.2d 229 (2d Cir. 1929).

■ The case at bar falls somewhere between these rules. The jury acquitted Patricia Waldman of Count I of the indictment, but convicted only Walter Kruse of conspiracy. With characteristic form, the indictment charges conspiracy not only between the two named defendants, but also as between them and "others to the grand jury unknown". The question, then, is whether there is sufficient evidence of other co-conspirators to allow the conviction of Walter Kruse to stand.

The Third Circuit spoke on this same legal question in *Pomerantz v. United States,* 51 F.2d 911 (3d Cir. 1931) as follows:

"The claim that the charge of conspiracy collapsed with the acquittal of the other defendants tried with the appellant is unsound, for the reason that the indictment alleges that he and his co-defendants conspired '*with divers other persons unknown*' to commit the crime charged. The testimony supports the charge in the indictment, and is sufficient to prove that unknown persons assisted the appellant in carrying out the conspiracy. *Donegan v. United States,* 287 F. 641 (C.C.A. 2); *Grove v. United States,* 3 F.2d 965 (C.C.A. 4). [Emphasis added].

Likewise, in *United States v. Gordon,* 242 F.2d 122 (3d Cir. 1956), cert. den. 354 U.S. 921, 77 S.Ct. 1378, 1 L.Ed.2d 1436, the Third Circuit stated:

"[If] the indictment names . . . persons unknown as co-conspirators, and there is evidence to support the charge that one of the two defendants conspired with the unknown person, the defendant's conviction may stand in spite of the fact that the other defendant was acquitted." See *Rogers v. United States,* 1951, 340 U.S. 367, 375, 71 S.Ct. 438, 95 L.Ed. 344; *Pomerantz v. United States,* 3rd Cir., 1931, 51 F.2d 911, 913."

■ On the other hand, as stated by the court in *United States v. Bruno,* 333 F.Supp. 570 (E.D.Pa.1971), the evidence must show not only that such individuals

were indeed unknown to the grand jury, but must also be sufficient to establish that the unknown person assisted the defendant in carrying out the conspiracy.

The cases cited require not only an allegation of conspiracy with unknown persons but also proof that there were such persons who in fact conspired with the defendant. Such proof must also obviously be within the ambit of conduct charged in the indictment.

Here, the indictment does not disclose any overt acts specifically involving unknown persons. There is no charge, for instance, that Walter Kruse telephoned a conspirator in Italy and agreed to obtain from him the counterfeit coins sold to Melvin Schoener. Nevertheless, such acts, if alleged, would obviously be a part of the same conspiracy actually alleged. Further, a person knowingly supplying Kruse with counterfeit gold coins would be liable as a conspirator for possessing and selling with intent to defraud counterfeit coins.

■ The fact that these allegations were not made in the form of stated overt acts or otherwise is not a fatal variance from the indictment. The recent Third Circuit case of *United States v. Adamo*, 534 F.2d 31 (3d Cir. 1976) (Filed March 29, 1976) adopted a harmless error test when an overt act in furtherance of a conspiracy proven at trial differs from any overt act alleged in the indictment. The Third Circuit there quoted with approval the statement in *United States v. Negro*, 164 F.2d 168 (2d Cir. 1947) that:

"[A]n overt act is not part of the crime in the sense that the act alleged must be proved, where another unalleged overt act is proved.

\*　　\*　　\*　　\*　　\*　　\*

"Consequently, we think the substitution of proof of an unalleged for an alleged overt act does not constitute a fatal variance. At most, such a variance justifies a request for continuance because of surprise."

The court in *Adamo* went on to state:

"Since the variance is not fatal per se, it must be examined in light of F.R.Cr.P. 52(a) to determine if it prejudiced defendant's substantial rights. *United States v. Somers*, 496 F.2d 723, 743–46 (3d Cir.) cert. den. 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974). In this case, those rights are primarily fair notice and avoidance of double jeopardy. *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046, 8 L.Ed.2d 240, 250 (1962)."

We do not believe any variance in the proof that may have occurred here to show conspiracy by a third unknown person was prejudicial to defendant's substantial rights. Showing that defendant obtained the very coins he was charged with possessing and selling is a logical part of the government's case if such evidence is available. Defendant did not move for a bill of particulars in an attempt to pin down such evidence. If he had and the government still failed to reveal Exhibit 15, this might be a different case.

There is no doubt that defendant Kruse sold the coins in question or that they are counterfeit. His explanation of Exhibit 15 was inherently incredible, and the jury was entitled to disbelieve it and find him guilty beyond a reasonable doubt.

## II. NEWLY DISCOVERED EVIDENCE

Five essential requisites for ordering a new trial on the basis of newly discovered evidence have been set out by the Third Circuit, as stated in *United States v. Meyers*, 484 F.2d 113 (1973):

"1. The evidence must have been discovered after the trial;

2. The failure to learn of the evidence must not have been caused by defendant's lack of diligence;

3. The new evidence must not be merely cumulative or impeaching;

4. It must be material to the principal issues involved; and

5. It must be of such a nature that in a new trial it would probably produce an acquittal."

See also, *United States v. Ianelli*, 528 F.2d 1290 (3d Cir. 1976) and cases cited therein.

 

We find the newly discovered evidence relied upon in this case fails to meet this standard. First, we find that the failure to learn of the evidence was caused by defendant's lack of due diligence. Secondly, the nature of the newly discovered evidence is not such as "would probably produce an acquittal" in the circumstances of this case.

Defendant has produced motel bills, gas station receipts, a car rental receipt and an airline ticket to show that he was in Miami or Fort Lauderdale, Florida, on March 9, 1974, the date Kruse was alleged in Count VI to have sold counterfeit coins to Melvin Schoener. Defendant did not rely upon an alibi defense in the trial itself. He in fact admitted selling gold coins to Schoener on various occasions, although not on March 9, 1974, in particular. Kruse's defense was that he did not know the coins to be counterfeit. The conviction of Kruse on this count shows simply that the jury did not believe him.

A new trial with these new exhibits admitted would be unlikely to produce a different result. If the jury accepted these exhibits as true, they could still find that Melvin Schoener was simply mistaken as to the exact date of the transaction, but that he purchased the coins from Kruse not "on" but "about" March 9, 1974, as alleged in the indictment. Alternatively, the jury could believe that Kruse flew from Florida to Pittsburgh and back for the purpose of selling the coins to Schoener. The alibi offered does not preclude this, and Kruse himself testified, regarding another incident:

> "I don't know where I was. If you say that I told you that I was in Pennsylvania in July, it only takes two hours to go to Miami and come back. I could have gone down there and come back the same day." (Tr. 565)

Kruse portrayed himself as a frequent traveler and he admitted selling coins to Schoener on various occasions. A late claimed alibi in these circumstances will not suffice.

Nor, in any event, does Kruse satisfactorily explain his failure to produce these documents sooner. His excuse that they were packed away in moving discloses defendant's own lack of diligence in preparing his defense, as he was afforded three months from the time the March 9, 1974, date appeared in a superseding indictment until the date of trial.

The court also finds that the remaining grounds for acquittal offered by defendant are without merit. The record contains substantial evidence to support the jury's conclusion that defendant is guilty on Counts I and VI beyond a reasonable doubt.